**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  1:12-cv-21932-KMM/TORRES**

GHM (SOUTH BEACH) LLC, a Delaware
limited liability company,

      Plaintiff,

v.

SETAI OWNERS LLC, a Delaware limited
liability company, TREVI LUXURY
HOSPITALITY GROUP, INC., a Texas
corporation, and SMB MANAGEMENT
LLC, a Florida limited liability company,

      Defendants.

_____/

**DEFENDANT SETAI OWNERS LLC'S MOTION FOR**
**MORE DEFINITE STATEMENT AND MOTION TO DISMISS**
**WITH INCORPORATED MEMORANDUM OF LAW**

Richard H. Critchlow
Elizabeth B. Honkonen
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
Suite 1100
Miami, Florida  33131-4327
Telephone:     (305) 373-1000
Facsimile:      (305) 372-1861

William A. Brewer III (*pro hac vice* application filed)
James S. Renard (*pro hac vice* application filed)
Jack G. B. Ternan (*pro hac vice* application filed)
BICKEL & BREWER
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas  75201
Telephone:     (214) 653-4000
Facsimile:      (214) 653-1015

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e), Defendant Setai Owners LLC ("Owner") files this motion for a more definite statement and to dismiss (the "Motion"). Owner's Motion is not intended to waive Owner's right to compel arbitration and/or seek a stay of proceedings pending arbitration. In fact, Owner intends to file a motion for stay of proceedings in this Court concurrently with its response to Plaintiff's motion to enjoin the arbitration proceedings. For the reasons set forth in the Memorandum of Law below, Owner's Motion should be granted.

## MEMORANDUM OF LAW

### I.

### PRELIMINARY STATEMENT

Owner is the developer and owner of the Setai Resort & Residences (the "Hotel"), a luxury hotel located in Miami Beach, Florida. Until March 31, 2012, General Hotel Management, Ltd. and Plaintiff GHM (South Beach) LLC operated the Hotel pursuant to a Management Agreement with Owner. After Owner had spent years in failed good faith attempts to work with its agent to resolve disputes, Owner terminated the Management Agreement and initiated an arbitration against General Hotel Management, Ltd. and Plaintiff to recover millions of dollars in damages resulting from their mismanagement. After the termination, Owner obtained access to the books and records and uncovered proof of massive financial irregularities, abusive employee policies, improper self-dealing, commingling of property, and other evidence of gross mismanagement.

Recognizing that its extensive wrongdoing leaves it with little chance of success in front of a panel of qualified arbitrators, Plaintiff initiated a state court action seeking to avoid arbitration. In its Complaint, Plaintiff asserts twelve meritless claims. In fact, as set forth below,

1

all but two of the claims asserted by Plaintiff against Owner should be dismissed at the pleading

stage for failure to state a claim.   Moreover, Plaintiff should be ordered to replead its Complaint

to identify which factual allegations purport to support each claim and to properly distinguish

between Plaintiff and non-party General Hotel Management, Ltd.

## II.

## APPLICABLE STANDARDS

### A.   Motion For More Definite Statement

Pursuant to Federal Rule of Civil Procedure 12(e), a "party may move for a more definite

statement of a pleading to which a responsive pleading is allowed but which is so vague or

ambiguous that the party cannot reasonably prepare a response."[1]   The motion "must point out

the defects complained of and the details desired."[2]   Courts "typically grant motions under Rule

12(e) for 'shotgun' pleadings, in which it is 'virtually impossible to know which allegations of

fact are intended to support which claim(s) for relief.'"[3]

### B.   Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss when a

pleading fails to state a claim upon which relief can be granted.[4]   To survive a motion to dismiss,

"a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

---

[1] FED. R. CIV. P. 12(e).

[2] *Id.*

[3] *See Gombos v. Central Mortg. Co.*, No. 10-81296-CIV, 2011 WL 832878, at *2 (S.D. Fla. Mar. 2, 2011) (*quoting Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

[4] *See* FED. R. CIV. P. 12(b)(6).

is plausible on its face."[5]   A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"[7]

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[8]  That pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[9]   A pleading that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[10]  Similarly, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[11]

---

[5] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

[6] *Id.*

[7] *Id.* at 679.

[8] *See id.* at 677-78.

[9] *Id.* at 678.

[10] *Id.* (quotation omitted).

[11] *Id.* (quotation omitted).

III.

**ARGUMENTS AND AUTHORITIES**

**A.    Pursuant To Federal Rule Of Civil Procedure 12(e), Plaintiff Should Be Required To Replead Its Complaint To Provide A More Definite Statement.**

Plaintiff should be required to replead with a more definite statement of allegations for at least two reasons.

### 1.    Plaintiff's Complaint is a "shotgun pleading"

Courts "typically grant motions under Rule 12(e) for 'shotgun' pleadings, in which it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'"[12]  An example of a "shotgun" pleading is one that incorporates all factual allegations in support of each claim.[13]  Plaintiff's Complaint has exactly this defect, as each count incorporates all factual allegations.[14]

This shotgun pleading style is especially problematic here, where Plaintiff's allegations supporting each count are often mere recitations of the elements of a claim.[15]  As discussed in more detail below, in most instances, Plaintiff does not even allege facts supporting each element of a claim.  Without a more definite statement of which factual allegations support each count, Owner can neither fully respond to the Complaint nor make clear to the Court that the facts alleged are insufficient to state a claim.  Accordingly, Plaintiff should be required to re-plead to

---

[12] *See Gombos*, 2011 WL 832878, at *2 (quotation omitted).

[13] *See Anderson*, 77 F.3d at 365-66 ("The first twenty-four paragraphs of the complaint contain allegations of fact that are adopted in full by all six counts.").

[14] *See* Complaint at 20, ¶ 69; 21, ¶ 76; 23, ¶ 86; 25, ¶ 100; 26, ¶ 104; 26; 107.

[15] *See, e.g.*, Complaint at 20, ¶ 70 ("The Defendants knew that the employees at the Hotel were GHM employees"); *id.* at 21, ¶ 79 ("The Defendants acted without proper justification.").

4

identify which factual allegations support each count.

### 2.    Plaintiff should be required to replead to distinguish between itself—GHM (South Beach) LLC—and General Hotel Management, Ltd.

Plaintiff appears to be asserting claims that should be dismissed because the claims belong to General Hotel Management, Ltd.,[16] but Plaintiff has pleaded facts in such a vague manner that the nature of the allegation is unclear.  For instance, in paragraph 3 of the Complaint Plaintiff alleges that "[e]stablished in 1992, GHM and its affiliates have created and manage some of the world's most highly regard boutique luxury resorts and hotels from its home base in Singapore."[17] The secretary of state filings for GHM (South Beach) LLC make clear that it was not created in 1992.[18]   Additionally, the Complaint refers to "GHM marks;"[19] however, those marks belong to General Hotel Management, Ltd., not Plaintiff.[20]

This inappropriate confusion of identities means that Plaintiff is asserting claims for damages to interests it does not own.  For instance, Defendants are alleged to have "seized control of GHM's 'GHM Americas' mail server" and thereby blocked access to the "property of and used by GHM's parent company for all of its email correspondence, not just correspondence related to the Hotel."[21]   Plaintiff alleges that the email correspondence belongs to it while

---

[16] *See* Notice of Removal (Doc. 1) at 8-11.

[17] *See* Complaint at 2, ¶ 3.

[18]  *See* Printout from Florida Secretary of State (identifying the date of formation as October 29, 2004), attached as Exhibit 1; Notice of Removal (Doc. 1) at 8-9.

[19] *See* Complaint at 4, ¶ 12; *id.* at 10, ¶ 31.

[20]  *See* Printout from the Trademark Electronic Search System of the United States Patent and Trademark Office (showing that the trademark "GHM" belongs to General Hotel Management, Ltd.), attached as Exhibit 2; Notice of Removal (Doc. 1) at 9-10.

[21] *See* Complaint at 11, ¶ 34.

simultaneously saying that the correspondence belongs to its parent company.  If it belongs to the parent company, then the parent company should appear and assert its interests, but if it belongs to Plaintiff, then injury to the parent company is irrelevant to Plaintiff's claims.

Similarly, Plaintiff claims it earns money by "entering into long term management contracts," as if it had ever entered into a management contract other than at the Hotel.[22] Plaintiff alleges that Defendants have harmed business at "GHM's other properties worldwide," even though Plaintiff has no such properties.[23]  Plaintiff alleges that Defendants have disrupted employment relationships in a way that "severely impacts GHM's ability to take on other management projects" even though Plaintiff does not take other projects.[24]

In the Complaint as written, Plaintiff is making blatantly false statements of fact regarding its own business.  However, rather than imposing sanctions, Plaintiff should be given an opportunity to replead to make clear the distinctions between General Hotel Management, Ltd. and Plaintiff GHM (South Beach) LLC.

**B.**     **Pursuant To Federal Rule Of Civil Procedure 12(b)(6), Counts II, III, IV, V, VII, IX, XI, And XII Of Plaintiff's Complaint Should Be Dismissed.**

**1.**     **Count II (breach of duty of good faith and fair dealing) should be dismissed.**

In Count II of the Complaint, Plaintiff purports to assert a claim that Owner breached a duty of good faith and fair dealing.  Plaintiff alleges that Owner breached this duty by "intentionally failing to comply with the termination provisions" of the Management Agreement and by "purposely engaging in a pattern to exclude and evict GHM from the Hotel despite

---

[22] *See* Complaint at 14, ¶ 43 (emphasis added).

[23] *See* Complaint at 15, ¶ 45.

[24] *See* Complaint at 16, ¶ 48.

Owner agreeing to a 15-year term."[25]   These allegations merely duplicate Plaintiff's express breach of contract claim that Owner breached the Management Agreement by terminating the Management Agreement.[26]   A claim for breach of the implied duty of good faith and fair dealing should be dismissed when, as is the case here, it merely duplicates a claim for breach of contract.[27]   Accordingly, Count II of the Complaint should be dismissed.

### 2.   Count III (declaratory relief regarding conditions precedent in the arbitration agreement) should be dismissed.

In Count III of the Complaint, Plaintiff purports to assert a claim for declaratory and injunctive relief seeking to prevent Owner from proceeding with an arbitration.   Plaintiff contends that:

> Because Owner irreparably failed to comply with the express prerequisites of the arbitration provision of the Management Agreement to the detriment of GHM, Owner has waived its right to arbitration, and the requested arbitration should not be allowed to go forward.[28]

---

[25] *See* Complaint at 18, ¶¶ 58-59.

[26] *See* Complaint at 17, ¶ 54.

[27] *See Nat'l Franchisee Ass'n v. Burger King Corp.*, No. 09-23435-CIV, 2010 WL 4811912, at *6 (S.D. Fla. Nov. 19, 2010) ("[T]he facts alleged by Plaintiffs for breach of the express duty of good faith and for breach of the implied duty of good faith are nearly identical. A claim of breach of the implied covenant of good faith may not be advanced when the allegations underlying that claim are duplicative of the allegations supporting a claim for breach of an express term in the contract."); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08-81442-CIV, 2009 WL 2729954, at *5 (S.D. Fla. Aug. 25, 2009) ("The Court also notes that the factual allegations underlying this claim are based upon QBE's failure to fairly and promptly perform under its obligations in the Contract. A breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim, as they are here."); *Trief v. Am. Gen. Life Ins. Co.*, 444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006).

[28] Complaint at 20, ¶ 67.

However, the United States Supreme Court has made clear that questions of waiver of arbitration and conditions precedent to arbitration are to be decided by the arbitrators, not the courts.[29]   The Eleventh Circuit recently confirmed that, while waiver by litigation conduct (*i.e.* filing a lawsuit and then seeking to enforce arbitration) is a question for the courts, waiver through failure to comply with conditions precedent is a question for the arbitrators.[30]

---

[29] *See Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84-85 (2002) ("Thus procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability. Indeed, the Revised Uniform Arbitration Act of 2000, seeking to incorporate the holdings of the vast majority of state courts and the law that has developed under the Federal Arbitration Act, states that an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' And the comments add that in the absence of an agreement to the contrary, issues of substantive arbitrability are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (internal punctuation and citations omitted); *see also PTA-FLA, Inc. v. ZTE USA, Inc.*, No. 3:11–cv–510–J–32JRK, 2011 WL 5024647, at *4 (M.D. Fla. Oct. 31, 2011) ("In this case, certain steps were in fact taken. Whether those steps satisfy the condition precedent in paragraph 20 of the Agreement is not for this Court to decide. Pursuant to *Howsam*, an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.") (internal punctuation omitted).

[30] *See Grigsby & Assocs., Inc. v. M Secs. Inv*., 664 F.3d 1350, 1353 (11th Cir. 2011) ("In *Howsam* the Supreme Court listed as issues presumptively for the arbitrator 'allegations of waiver, delay, or a like defense to arbitrability.' Notwithstanding this language, three Circuit Courts of Appeal have interpreted *Howsam* as presumptively assigning to courts—rather than to arbitrators—questions involving allegations of waiver when the waiver is specifically based on a party's conduct. Circuits, in the most part, treated *Howsam*'s use of the term 'waiver' as referring not to conduct-based waiver, but to a 'defense arising from non-compliance with contractual conditions precedent to arbitration.' The reasoning of the First, Third, and Sixth Circuits is persuasive to us. Today we conclude that it is presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate.") (internal citations and punctuation omitted).

In addition, the parties agreed to arbitrate according to the rules of arbitration set down by the International Chamber of Commerce,[31] and those rules similarly provide that arbitrability is to be decided by the arbitrators.[32]   Accordingly, this claim should be dismissed.

### 3.     Count IV, alleging tortious interference with employment relationships, should be dismissed.

In Count IV of the Complaint, Plaintiff purports to assert a claim that Owner tortiously interfered with the relationship between Plaintiff and its employees.   Plaintiff fails to state a claim for at least two reasons and, accordingly, Count IV of the Complaint should be dismissed.

First, Plaintiff cannot state a claim for the hiring away of employees because, under Florida law, Owner had a privileged right to do so.[33]   Plaintiff does not allege any facts supporting a reasonable inference that Owner sought to hire Plaintiff's present or former employees with the specific intent to harm Plaintiff, rather than to advance Owner's own business interests.[34]   Accordingly, Plaintiff cannot establish a claim for tortious interference.

---

[31] *See* Management Agreement at 21, art. XXVI § 1, attached as Exhibit A to the Complaint.

[32] *See* 2012 Arbitration and ADR Rules of the International Court of Arbitration of the International Chamber of Commerce ("Arbitration Rules") at 14, art. 6(3), attached as Exhibit 3.

[33] *See In re Maxxim Med. Group, Inc*., 434 B.R. 660, 688 (Bankr. M.D. Fla. 2010) ("A competitor is privileged to hire away an employee whose employment is terminable at will."); *Fiberglass Coatings, Inc. v. Interstate Chem., Inc*., 16 So. 3d 836, 838 (Fla. 2d DCA 2009) ("Causation requires a plaintiff to 'prove that the defendant manifested a specific intent to interfere with the business relationship.'  No liability will attach unless it is established 'that the defendant intended to procure a breach of the contract.'  'One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.'") (quotations omitted).

[34] *Romika-USA, Inc. v. HSBC Bank USA, N.A*., 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("[A] company's actions are justified when undertaken to protect its own business interests.").

Second, Plaintiff cannot state a claim for tortious interference with employment relationships because Owner had an interest in the relationship between Plaintiff and its employees as well as a financial interest in how the relationship performed.  Under Florida law:

> For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship. A defendant is not a "stranger" to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship. . . . [A] defendant is not a stranger to a business relationship, and thus cannot be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed.[35]

The employees of Plaintiff at the Hotel were sub-agents of Owner for which Owner had a financial interest in the performance of their duties.[36]  Accordingly, Owner's actions are privileged and, therefore, the tortious interference claim should be dismissed.

### 4. Count V (tortious interference with purported business relationships with private residences) should be dismissed.

In Count V of the Complaint, Plaintiff purports to assert a claim that Owner tortiously interfered with "separate contracts to manage certain private residences at the Setai participating in a 'rental program.'"[37]  Plaintiff fails to state a claim for at least two reasons and, accordingly, Count V of the Complaint should be dismissed.

First, Plaintiff has failed to allege that Owner specifically intended to interfere with any business relationship.  Plaintiff merely alleges that Owner knew there were contracts, that Owner

---

[35] *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quotation omitted).

[36] *See* Management Agreement at 3, art. 1 § 1 ("The Operator, as the sole agent of Owner, will act in accordance with the terms and conditions hereinafter set forth"); Management Agreement at 8, art. VII, § 2.3 ("All staff and other operating and service employees employed at the Hotel shall be or be deemed to be for all purposes the employees of the Operator.").

[37] *See* Complaint at 21, ¶ 77.

participated in "ousting" Plaintiff from the Hotel, and that such ouster had the consequence of interfering with Plaintiff's ability to maintain and continue those contracts.[38]   However, specific intent to damage a business relationship, not just knowledge of a business relationship, is required to state a claim for tortious interference.[39]   Because Plaintiff has failed to plead, and cannot plead, that Owner had the specific intent to harm Plaintiff, Plaintiff's claim should be dismissed.

Second, Plaintiff has failed to plead any facts that show that it is plausible that Owner's actions were without justification.  Under Florida law, "a company's actions are justified when undertaken to protect its own business interests."[40]   Plaintiff has alleged no facts to show that Owner did anything other than protect its own business interests.  Moreover, Plaintiff has not alleged any acts of Owner that were improper.  The facts alleged against Owner are that it "participated in orchestrating the improper raid of the Hotel and ouster of GHM from the Hotel;" however, those allegations do not establish that Owner did anything improper.  Plaintiff had no legal right to possession of the Hotel[41] and, thus, once Owner had terminated the agency

---

[38] *See* Complaint at 21, ¶¶ 77-78.

[39] *See Romika-USA, Inc.*, 514 F. Supp. 2d at 1339 ("To be liable for tortious interference a defendant must have both the intent to damage the business relationship and a lack of justification for doing so.") (quotation omitted); *Fiberglass Coatings*, 16 So. 3d at 838; *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002) ("In considering the element of causation, Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship. Thus, even if the defendant is aware of the existing business relationship, the defendant will not be liable for tortious interference with that relationship unless there is evidence that the defendant intended to procure a breach of the contract.") (citations omitted).

[40] *Romika-USA, Inc.*, 514 F. Supp. 2d at 1339.

[41] *See* Management Agreement at 6-7, art. VII § 1 ("[T]he Operator will be acting only as the appointed representative of the Owner, and nothing in this Agreement shall be construed as

11

relationship between it and Plaintiff, Owner had every right to take full control over its property. Accordingly, the tortious interference claim must be dismissed.

     5.     **Count VII (violation of the Florida Trade Secrets Act) should be dismissed.**

In Count VII of the Complaint, Plaintiff purports to assert a claim under the Florida Trade Secrets Act. Plaintiff fails to state a claim for at least four reasons and, accordingly, Count VII of the Complaint should be dismissed.

First, under the terms of the Management Agreement, all of the materials alleged by Plaintiff to be confidential (standard operating manuals, training manuals, and employees files) belong to Owner. [42] Article XI § 1 of the Management Agreement provides:

> The books of account and all other records relating to, or reflecting, the operation of the Hotel shall be kept at the Hotel . . . All such books and records shall be the property of the Owner . . . Upon the termination of the Agreement, all of such books and records up to the date of termination shall forthwith be delivered up to Owner so as to ensure the orderly continuance of the operation of the Hotel. . . . [43]

While other hotel management companies may structure their relationship with owners differently and assign ownership of the operating materials to the management company, the contract here is clear that all records relating to or reflecting the operation of the Hotel belong to Owner. Accordingly, Plaintiff cannot assert a trade secrets claim.

Second, even if the materials belonged to it, Plaintiff has failed to plead any facts showing that it is plausible that any of the allegedly confidential and proprietary information or

---

creating a tenancy, partnership, joint venture or any other relationship between the parties hereto.").

[42] *See* Complaint at 23, ¶ 87 (identifying the purported "confidential and proprietary information and materials" as "including standard operating procedure manuals, training manuals, and employee files").

[43] Management Agreement at 11, art. XI § 1 (emphasis added).

materials are in fact trade secrets.  Tellingly, Plaintiff does not even use the words "trade secret" to describe the information that was purportedly misappropriated.[44]  Under the Florida Uniform Trade Secrets Act, a "trade secret" is information that (1) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use" and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[45]

Plaintiff does not, and cannot, allege that the purported information is not "readily ascertainable by proper means."  Indeed, in light of the fact that Owner had the right under the Management Agreement to inspect all records relating or reflecting the operation of the Hotel,[46] all of the materials identified by Plaintiff (standard operating manuals, training manuals, and employees files) were readily accessible by Owner and its designees.[47]   Accordingly, the information was not a trade secret and the claim must be dismissed.

In addition, Plaintiff does not identify any efforts that it took to maintain the secrecy of the unnamed "trade secrets."   Plaintiff does not allege that employees signed confidentiality

---

[44]  *See* Complaint at 23, ¶¶ 87-94 (purporting to allege a trade secret claim but conspicuously failing to even use the words "trade secret").

[45]  § 688.002(4), Fla. Stat. (1997).

[46]  *See* Management Article at 11, art. XI § 1 ("The books of account and all other records relating to, or reflecting, the operation of the Hotel shall be kept at the Hotel and shall be available to the Owner and its duly authorized representatives for examination, audit, inspection and copying.").

[47]  *See* Complaint at 23, ¶ 87 (identifying the purported "confidential and proprietary information and materials" as "including standard operating procedure manuals, training manuals, and employee files").

agreements, that the materials were kept under lock and key, or that any particular measure was taken to protect the secrecy of information.[48]   Accordingly, Plaintiff has failed to show that it is plausible that the information constitutes a trade secret, and the claim must be dismissed.

Third, even if the alleged "confidential and proprietary information and materials" were trade secrets, Plaintiff has failed to allege facts showing any misappropriation of such trade secrets.   Based on the allegations in the Complaint, Plaintiff's theory appears to be that:   (1) there was proprietary information at the Hotel; and (2) mere "failure to return" such information "constitutes misappropriation."[49]   However, "failure to return" information does not constitute misappropriation.

Under the Florida Uniform Trade Secrets Act, misappropriation is either:   (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (2) "disclosure or use of a trade secret of another without express or implied consent by a person" under three particular circumstances.[50]   Plaintiff does not allege that any of the information was:   (1) acquired by improper means as defined in the statute; or (2) used or disclosed—much less that the information was acquired by improper means, used, or disclosed by Owner.   A mere "failure to return" does not constitutes

---

[48] Given that standard operating procedure manuals were located in unlocked public areas of the Hotel and some computer servers did not even have password protections, it is doubtful that Plaintiff can plead in good faith that reasonable measures were untaken to protect the secrecy of information.

[49] *See* Complaint at 23, ¶ 93 ("The Defendants' failure to return GHM's confidential information and proprietary information and materials constitutes misappropriation, in violation of Florida Statutes Section 688.001, et. seq.").

[50] § 688.002(2), Fla. Stat. (1997).

misappropriation, and accordingly, Plaintiff has failed to allege a claim for trade secret misappropriation.

Fourth, even if the information and property does not belong to Owner, Plaintiff has failed to allege facts that show that it is plausible that Plaintiff, as opposed to General Hotel Management, Ltd., owns the information and property.  For instance, Plaintiff alleges that it "brought its confidential and proprietary information and materials . . . to the Hotel."[51] However, Plaintiff, as opposed to General Hotel Management, Ltd., does not manage any other hotels, and therefore, Plaintiff cannot have "brought" any materials to the Hotel.  Accordingly, Plaintiff has failed to allege facts showing that it is plausible that the alleged confidential information belongs to Plaintiff, as opposed to General Hotel Management, Ltd.

### 6.      Count IX (conversion) should be dismissed.

In Count IX of the Complaint, Plaintiff purports to assert a "conversion" claim against Owner.  Plaintiff fails to state a claim for at least three reasons and, accordingly, Count IX of the Complaint should be dismissed.

First, while Plaintiff alleges that "Defendants' conduct during and after the unlawful raid permanently and indefinitely deprived the GHM of a vast amount if its property," Plaintiff does not allege the requisite possessory intent.  As this Court has previously held, "the essence of conversion is not the possession of property by the wrongdoer but rather such possession in

---

[51] *See* Complaint at 23, ¶ 87.

conjunction with a present intent . . . to deprive the person entitled to possession of the property."[52]

Second, Plaintiff has not alleged that Plaintiff demanded Owner return the alleged property and that Owner refused to return the alleged property. To state a claim for conversion, a Plaintiff must allege that either a demand was made and refused or that a demand would be futile, and a failure to so plead requires dismissal.[53] Accordingly, Plaintiff has not alleged, and cannot in good faith allege, a refusal by Owner to comply with any demand from Plaintiff.

Third, Plaintiff has failed to plead facts establishing ownership of the alleged property. To the contrary, Section 1 of Article XI of the Management Agreement between Owner and General Hotel Management, Ltd. provides:

> The books of account and all other records relating to, or reflecting, the operation of the Hotel shall be kept at the Hotel . . . All such books and records shall be the property of the Owner . . . Upon the termination of the Agreement, all of such books and records up to the date of termination shall forthwith be delivered up to Owner so as to ensure the orderly continuance of the operation of the Hotel. . . .[54]

Therefore, all of the items asserted by Plaintiff to be its property, other than purported attorney-client communications and items belonging to employees, constitute Hotel-related

---

[52] *Small Business Admin. v. Echevarria*, 864 F. Supp. 1254, 1263 (S.D. Fla. 1994) (*quoting Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd*., 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984)).

[53] *See Gordon v. Beary*, 444 Fed. App'x 427, 435 (11th Cir. 2011) ("Because Gordon did not demand return of the seized property before her possessory interest in that property terminated, she has no claim for conversion against the Sheriff."); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 264-65 (Bankr. N.D. Fla. 2003) ("Additionally, in Florida, one bringing an action for conversion must show that either a demand was made, or, if not made, plead that such a demand would have been futile. 'Demand is an essential element in any claim for conversion and failure to make such a demand or allege the futility of doing so is fatal.'" *quoting Ginsberg v. Lennar Fla. Holdings*, 645 So. 2d 490, 500 (Fla. 3d DCA 1994))).

[54] Management Agreement at 11, art. XI § 1 (emphasis added).

books and records and are the property of Owner.[55]  The items belonging to employees are not Plaintiff's property, and Plaintiff has alleged no facts establishing that any purported attorney-client communications located at the Hotel involved GHM (South Beach) LLC as opposed to General Hotel Management, Ltd.  Accordingly, Plaintiff has failed to state a claim because Plaintiff has failed to allege facts showing that it is plausible that Owner converted any property belonging to Plaintiff.[56]

       **7.**    **Count XI (conspiracy) should be dismissed.**

In Count XI of the Complaint, Plaintiff purports to assert a conspiracy claim against Owner.  Plaintiff fails to state a claim for at least two reasons and, accordingly, Count XI of the Complaint should be dismissed.

First, Plaintiff has failed to state a claim for conspiracy because Plaintiff has failed to plead an underlying tort.[57]  Plaintiff alleges that Defendants agreed to "deprive GHM of its business interest as manager of the Hotel, steal the employees it recruited and trained, and misappropriate its trade secrets and proprietary information;" however, as set forth above,

---

[55] *See* Complaint at 25, ¶ 101 ("This property includes, but is not limited to GHM operating procedure manuals, employee files, training manual, attorney-client communications, global operations documentation, style guides, guest profile databases, GHM P&P files, supplier lists and contracts, accounting books and records, personal belongings and effects of GHM employees.").

[56] *See Iqbal*, 556 U.S. at 677-78 ("A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quotation omitted).

[57] *See Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong.") (quotation omitted).

Plaintiff has failed to state an actionable claim for any of those purported wrongs.  Accordingly, this count must be dismissed.

Second, Plaintiff has failed to set forth any facts establishing an agreement to undertake any tortious activity.  Plaintiff's only allegation purporting to support the existence of an agreement is that Owner, Trevi, and SMB purportedly participated jointly in the "raid." However, without additional factual basis suggesting the existence of an agreement, joint conduct is alone insufficient to state a claim for conspiracy.[58]  Accordingly, Plaintiff has failed to state a claim, and this count must be dismissed.

### 8.     Count XII (willful and wanton termination) should be dismissed.

In Count XII of the Complaint, Plaintiff purports to assert a claim for "willful and wanton termination" against Owner.  The basis of the claim appears to be that Owner intentionally breached the Management Agreement by not complying with the termination provisions.  This purported claim should be dismissed for two reasons.

First, no Florida court has recognized a claim for "willful and/or wanton" termination of a contract.  In fact, courts are clear that it is perfectly permissible and in fact sometimes desirable that a party intentionally breach a contract.[59]  Accordingly, Owner's purported intentional breach

---

[58] See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting [an] agreement . . . [W]ithout that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. . . .").

[59] See United States v. Blankenship, 382 F.3d 1110, 1133 (11th Cir. 2004) ("It is not illegal for a party to breach a contract; a contract gives a party two equally viable options (perform or pay compensation), between which it is generally at liberty to choose. A 'promise' contained in a contract is not a certification that the promisor will actually perform the specified acts, but is instead a grant of a legal right to the other party to either enjoy performance or receive damages."); Allapattah Servs., Inc. v. Exxon Corp., 61 F. Supp. 2d 1326, 1329 (S.D. Fla. 1999) ("Not only are intentional breaches exempt from

of a contract does not constitute a separate or independent cause of action.

Second, even if a claim for intentional breach of contract existed, it is merely duplicative of Plaintiff's breach of contract claim and purported breach of implied duty of good faith and fair dealing claim.  Accordingly, the Court should dismiss this claim.

## IV.

## REQUEST FOR RELIEF

For the foregoing reasons, Owner requests that the Court enter an order:

(1)     Granting Owner's request for a more definite statement and requiring Plaintiff to:

    (a)     identify the factual allegations supporting each count; and

    (b)     make clear the distinctions between General Hotel Management, Ltd. and Plaintiff GHM (South Beach) LLC;

(2)     Dismissing Counts II, III, IV, V, VII, IX, XI, and XII of the Complaint; and

(3)     Granting Owner such other relief, at law and in equity, which the Court deems just and proper.

---

punitive claims, they are sometimes encouraged. The law has long recognized the view that a contracting party has the option to breach a contract and pay damages if it is more efficient to do so. The logical result of this theory is a limitation of breach of contract damage exposure to losses contemplated by the contracting parties, and for which a defendant 'at least tacitly agreed to assume responsibility.'").

Dated: May 30, 2012
      Miami, Florida

Respectfully submitted,


s/Elizabeth B. Honkonen
Richard H. Critchlow, Esq.
(Florida Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen, Esq.
(Florida Bar No. 149403)
ehonkonen@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida  33131-4327
Telephone:      (305) 373-1000
Facsimile:      (305) 372-1861

      - and -

William A. Brewer III
(*pro hac vice* application filed)
wab@bickelbrewer.com
James S. Renard
(*pro hac vice* application filed)
jsr@bickelbrewer.com
Jack G. B. Ternan
(*pro hac vice* application filed)
jgt@bickelbrewer.com
BICKEL & BREWER
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas  75201
Telephone:      (214) 653-4000
Facsimile:      (214) 653-1015

**COUNSEL FOR DEFENDANT SETAI
OWNERS LLC**

## <u>CERTIFICATE OF SERVICE</u>

      **I certify** that on May 30, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                      s/Elizabeth B. Honkonen

**SERVICE LIST**
*GHM (South Beach LLC) v. Setai Owners LLC, et al.*
**CASE NO. 1:12-cv-21932-KMM/TORRES**
**United States District Court, Southern District of Florida**

Kenneth R. Hartmann, Esq. (Florida Bar No. 664286)
krh@kttlaw.com
Daniel F. Benavides, Esq. (Florida Bar No. 81675)
dfb@kttlaw.com
Douglas A. Wolfe, Esq. (Florida Bar No. 28671)
daw@kttlaw.com
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone:     (305) 372-1800
Facsimile:     (305) 372-3508
*Counsel for Plaintiff*
**[VIA CM/ECF]**

Richard H. Critchlow, Esq. (Florida Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen, Esq. (Florida Bar No. 149403)
ehonkonen@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
Suite 1100
Miami, Florida 33131-4327
Telephone:     (305) 373-1000
Facsimile:     (305) 372-1861
*Counsel for Defendants Setai Owners LLC and
SMB Managements LLC*
**[VIA CM/ECF]**

William A. Brewer, III
wab@bickelbrewer.com
James S. Renard
jsr@bickelbrewer.com
Jack G. Ternan
jgt@bickelbrewer.com
Bickel & Brewer
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas 75201
Telephone:     (214) 653-4000
Facsimile:     (214) 653-1015
*Counsel for Defendants Setai Owners LLC and
SMB Management LLC*
**[VIA U.S. MAIL]**

22