# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  1:12-cv-21932-KMM / TORRES

GHM (SOUTH BEACH) LLC, a Delaware
limited liability company,

      Plaintiff,

v.

SETAI OWNERS LLC, a Delaware limited
liability company, TREVI LUXURY
HOSPITALITY GROUP, INC., a Texas
corporation, and SMB MANAGEMENT
LLC, a Florida limited liability company,

      Defendants.

_____/

**DEFENDANTS SETAI OWNERS LLC AND SMB MANAGEMENT LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO ENJOIN USE AND COMPEL RETURN OF GHM'S PRIVILEGED
DOCUMENTS AND CONFIDENTIAL TRADE SECRET MATERIALS AND ENJOIN
FURTHER USE OF GHM'S TRADEMARKS**

Richard H. Critchlow, Esq.
Elizabeth B. Honkonen, Esq.
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
Suite 1100
Miami, Florida  33131-4327
Telephone:    (305) 373-1000
Facsimile:    (305) 372-1861

William A. Brewer III (admitted *pro hac vice*)
James S. Renard (admitted *pro hac vice*)
Jack G. B. Ternan (admitted *pro hac vice*)
BICKEL & BREWER
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas  75201
Telephone:    (214) 653-4000
Facsimile:    (214) 653-1015

Defendants Setai Owners LLC ("Owner") and SMB Management LLC ("SMB") file this Response in Opposition to Plaintiff's Motion to Enjoin Use and Compel Return of GHM'S Privileged Documents and Confidential Trade Secret Materials and to Enjoin Further Use of GHM's Trademarks (the "Motion")[1], as follows:

## I. <u>PRELIMINARY STATEMENT</u>

Plaintiff's Motion was filed in obvious disregard of the provisions of its now-terminated Management Agreement with Owner that <u>all</u> "records relating to, or reflecting, the operation of the Hotel . . . shall be the property of Owner," and that, "[u]pon the termination of this Agreement, all of such books and records shall forthwith be delivered up to Owner as to ensure the orderly continuance of the operation of the Hotel."[2]  Most, if not all, of the materials and information over which Plaintiff now asserts ownership (indeed, purported "trade secret" status) relate to the operation of the Hotel and were created and/or maintained by Plaintiff in its capacity as the admitted "agent" and "representative" of Owner.[3]  Thus, those alleged "trade secrets" are, in fact, Owner's property.

Another fatal flaw in the Motion is Plaintiff's disregard and blurring of the juridical distinction between itself and its parent, General Hotel Management Ltd., which is a Singapore-

---

[1] The Motion also seeks to enjoin Trevi Luxury Hospitality Group, Inc. ("Trevi").  Trevi was served with Plaintiff's Complaint after the other two defendants and is not obligated to respond to Plaintiff's Complaint until June 19, 2012.  Trevi has not been served with the Motion.

[2] *See* Management Agreement at 11, art. XI, § 1, attached as Exhibit C to the Motion.

[3] *See id.* at 3, art. I, § 1 (Operator shall act as the "agent of the Owner"); *id.* at 6, Art. VII(1) ("In taking any action pursuant to this Agreement, the Operator will be acting only as the appointed representative of the Owner . . .").

based British Virgin Islands company.[4]  Contrary to Plaintiff's representations to the Court, its parent (and <u>not</u> Plaintiff, a single-purpose entity) owns the "GHM" marks and operates "GHM-managed properties" worldwide.[5]  Thus, to the extent that the Motion concerns materials and data relating exclusively to one or more of General Hotel Management Ltd.'s other hotels and resorts, or to the "GHM" chain in general, Plaintiff lacks standing to pursue those claims and/or protect those interests.

In any event, circumstances have changed significantly since Plaintiff filed its Motion. The parties, through their respective counsel, have met and conferred at length; reached agreement as to the ownership of numerous categories of materials and documents; exchanged and transferred materials subject to those agreements; segregated and placed in safekeeping materials as to which ownership is in dispute; and arranged to copy and review certain electronically-stored data for purposes of determining the ownership thereof.  Notwithstanding those developments, Plaintiff has refused to withdraw or amend its Motion or otherwise limit the categories of materials at issue or the relief requested.  As demonstrated herein, there is <u>no</u> need for preliminary injunctive relief and, therefore, Plaintiff's Motion should be denied in all respects.

---

[4] General Hotel Management Ltd. and Plaintiff GHM (South Beach) LLC are the two Respondents in the pending arbitration proceeding initiated by Owner on March 31, 2012, in the International Court of Arbitration in Paris.

[5] *See* Defendant Setai Owners LLC's Notice of Removal, filed May 23, 2012, at 8-10, and the supporting evidence cited therein; *see also id.* at 11 ("[M]ost, if not all, of the allegedly 'proprietary' and 'confidential' documents and information that Plaintiff seeks to protect in [this] Action actually belong - if not to Owner - to General Hotel Management Ltd.").

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Hotel

Owner holds ownership interests in major portions of the Setai Resort & Residences (the "Hotel"), located in Miami Beach, Florida.[6]   The Hotel is comprised of three principal components:  (1) an Art Deco building consisting largely of condominium-hotel units, the vast majority of which are owned by Owner; (2) a 38-floor condominium tower consisting largely of residential-condominium units owned by third-parties; and (3) the Abbey building, owned by an affiliate of Owner.[7]  Most of the Hotel common areas, including the lobbies, restaurants, retail outlets, spa, and walkways, are owned by Owner.[8]  Most of the management offices utilized in connection with the operation of the Hotel are in the Abbey building, which is located a block away from the Hotel.[9]  Until March 31, 2012, General Hotel Management, Ltd., a British Virgin Islands company with its principal place of business in Singapore ("GHM"), and GHM (South Beach) LLC ("Plaintiff") acted as Owner's agents in the management of the Hotel under a Management Agreement dated March 20, 2000 (the "Management Agreement").[10]

### B.  The Termination Of Plaintiff And GHM And Transition To New Management.

After years of failed attempts to encourage GHM and Plaintiff to comply with their

---

[6] *See* Declaration of Richard Siu ("Siu Declaration") at 1, ¶ 4, attached hereto as Exhibit 1.

[7] *See* Siu Declaration at 2, ¶ 6.

[8] *See* Siu Declaration at 2, ¶ 6.

[9] *See* Siu Declaration at 2, ¶ 6.

[10] *See* Siu Declaration at 2, ¶ 7; Management Agreement, attached as Exhibit C to the Motion.

obligations, on March 31, 2012, Owner terminated the Management Agreement,[11] initiated an arbitration against GHM and Plaintiff in the International Court of Arbitration of the International Chamber of Commerce located in Paris, France,[12] and Owner appointed Trevi as the new management company for the Hotel.[13]

Owner and Trevi immediately took steps to remove GHM trademarks from the property.[14]  The "GHM" mark was removed from signs on the exterior and interior walls.[15]

---

[11] Although not relevant to its request for injunctive relief, Plaintiff alleges throughout its Motion that Owner's termination of the Management Agreement violated the terms thereof, because Owner failed to precede that termination with:  (1) a notice and opportunity to cure; and/or (2) an attempt at some unspecified form of dispute resolution.  Both of those contentions are without merit as a matter of law.  First, Owner terminated the Management Agreement pursuant to the Florida common law right to terminate a contract due to the other party's material breach (and not pursuant to the alternative and non-exclusive termination provisions in the Management Agreement).  *See, Kaufman v. Swire Pacific Holdings, Inc.,* Case No. 09-20160-CIV, 2011 WL 6780924, at *7, n.4 (S.D. Fla. Dec. 27, 2011); *Bradley v. Health Coalition, Inc.,* 687 So. 2d 329, 333 (Fla. 3d DCA 1997);   Request for Arbitration at 18, ¶51 ("Owner's termination was in strict accord with Florida common law, which provides a non-defaulting party the right to terminate a contract with impunity in the event of the other party's material breach thereof (which is separate from, and an addition to, the contractual termination rights set forth in Section 1.1 of Article XIX of the Management Agreement)."), attached as Exhibit A to the Siu Declaration.  Second, the Management Agreement is devoid of any requirement to initiate and engage in a dispute resolution process as a condition precedent to termination. Given the material breaches of contract and violations of fiduciary duty committed by Plaintiff and its parent, General Hotel Management Ltd. (*see* Request for Arbitration), the events of March 31, 2012, did not (contrary to Plaintiff's hyperbolic rhetoric) constitute an unlawful "raid."  Rather, Owner properly exercised its right to terminate the Management Agreement, revoke Plaintiff's agency powers thereunder, take possession and control of its own property, and appoint and install a new agent-manager to operate its Hotel.

[12] *See* Siu Declaration at 2, ¶ 8; Request for Arbitration, attached as Exhibit A to the Siu Declaration.

[13] *See* Siu Declaration at 2, ¶ 8.

[14] *See* Siu Declaration at 6, ¶ 16; Declaration of Atef Mankarios ("Mankarios Declaration") at 3, ¶ 7, attached hereto as Exhibit 3.

GHM stationery was removed from the rooms, and GHM tags were removed from towels.[16] Guests were provided blank room keys instead of keys with the GHM mark.[17]  New e-mail accounts were created for the employees at the Hotel.[18]

Owner and Trevi also took steps to avoid the misuse of any potential property or privileged communications of Plaintiff or GHM.[19]  The general manager's office was secured,[20] and no one was permitted to review or remove documents from that office prior to an inspection by counsel for GHM.[21]  No employees of Trevi or Owner were permitted access to the information on the "ghmamericas.com" e-mail server.[22]  Similarly, employees in the Human Resources ("HR") department at the Hotel were instructed not to review Plaintiff's employee files or payroll information.[23]

---

[15] *See* Siu Declaration at 6, ¶ 15; Mankarios Declaration at 3, ¶ 7.

[16] *See* Siu Declaration at 6, ¶ 15; Mankarios Declaration at 3, ¶ 7.

[17] *See* Mankarios Declaration at 3-4, ¶ 8.

[18] *See* Siu Declaration at 6, ¶ 15; Mankarios Declaration at 3, ¶ 7; Declaration of Greg O'Keefe ("O'Keefe Declaration") at 2, ¶ 6, attached hereto as Exhibit 4.  Owner initially allowed the "ghmamericas.com" email server to continue to operate so as to not disrupt Plaintiff's operations; however, upon Plaintiff's request, Owner later deactivated that email server.  *See* O'Keefe Declaration at 2, ¶ 4.

[19] *See* Siu Declaration at 5, ¶ 16; Mankarios Declaration at 4, ¶ 9.

[20] *See* Siu Declaration at 6, ¶ 16; Mankarios Declaration at 4 ¶ 9.

[21] *See* Siu Declaration at 6, ¶ 16; Mankarios Declaration at 4, ¶ 9.

[22] *See* Siu Declaration at 6, ¶ 16; O'Keefe Declaration at 2, ¶¶ 5-6.

[23] *See* Siu Declaration at 6, ¶ 16.

## C.     Owner's Attempts To Work With Plaintiff And GHM To Return Any Property Belonging To Them

Efforts to return any property belonging to Plaintiff and GHM located at the Hotel began immediately.[24]  On April 6, 2012, counsel for GHM and Xavier Rodriguez, the former Director of Human Resources at the Hotel, were permitted to review all of the documents in the HR department,[25] and the employee files and payroll information were turned over to counsel for Plaintiff.[26]  Similarly, counsel for Plaintiff was given access to the general manager's office and the offices in the Abbey, including the assistant general manager's office and the finance offices, to review any and all materials to determine if Plaintiff asserted ownership.[27]  Owner's security personnel assisted in the boxing of the documents owned by Plaintiff and, on April 12, 2012, dozens of boxes of materials claimed by Plaintiff/GHM were taken from the property by counsel for Plaintiff with the permission of Owner.[28]

Counsel for Owner anticipated that a similar process for determining ownership of electronic information would occurr.  However, immediately following the return of hard-copy documents, counsel for Plaintiff began asserting unreasonable demands, including that "Setai Owners and Trevi refrain from accessing, searching, or using any electronic data, records, and/or

---

[24] *See* Letter from Setai Owners LLC to Plaintiff and GHM dated March 31, 2012, attached as Exhibit B to the Siu Declaration.

[25] *See* Declaration of John Duggan ("Duggan Declaration") at 2, ¶ 4, attached hereto as Exhibit 2.

[26] *See* Duggan Declaration at 2, ¶ 5.

[27] *See* Duggan Declaration at 2, ¶ 4.

[28] *See* Duggan Declaration at 2, ¶ 5.

files existing prior to termination"[29] and that they not "modify or delete any electronic data files."[30] In other words, Plaintiff and GHM demanded that Owner cease operating the Hotel.[31]

In response to those demands, counsel for Owner reminded Plaintiff that Section 1 of Article XI of the Management Agreement recognized Owner's ownership of <u>all</u> records in any way "relating to" the "operation of the Hotel":

> The books of account and all other records relating to, or reflecting, the operation of the Hotel shall be kept at the Hotel . . . All such books and records shall be the property of the Owner . . . Upon the termination of the Agreement, all of such books and records up to the date of termination shall forthwith be delivered up to Owner so as to ensure the orderly continuance of the operation of the Hotel. . . .[32]

Instead of addressing the plain language of the contract and Owner's good faith offer to work with Owner to determine ownership of the electronic data, Plaintiff simply reiterated its demands that Owner cease using *any* of the computers at the Hotel. [33]

**D.** <u>**Plaintiff Initiates This Litigation And Files The Motion.**</u>

On May 2, 2012, Plaintiff filed its Complaint initiating this case.[34]  On May 4, 2012, Owner responded to Plaintiff's letter dated April 24, 2012, and again requested that Plaintiff

---

[29] *See* Letter from Daniel Benavides dated April 13, 2012, at 3, attached as Exhibit A to the Declaration of Jack G. B. Ternan ("Ternan Declaration"), which is attached hereto as Exhibit 6.

[30] *See* Letter from Kenneth Hartman dated April 13, 2012, at 3, attached as Exhibit B to the Ternan Declaration.

[31] *See* Siu Declaration at 7-8, ¶¶ 18-10; O'Keefe Declaration at 3, ¶ 10.

[32] *See* Letter from James Renard dated April 18, 2012, at 1, attached as Exhibit C to the Ternan Declaration.

[33] *See* Letter from Daniel Benavides dated April 24, 2012, attached as Exhibit D to the Ternan Declaration.

[34] *See* Exhibit 1 to the Notice of Removal (D.E. 1).

cooperate with Owner to determine which, if any, electronic data belonged to Plaintiff. [35]  Owner reiterated that request for cooperation on May 7, 2012.[36]

Instead of cooperating with Owner, Plaintiff filed the Motion.[37]  The Motion essentially carries forward Plaintiff's prior demand that Owner cease operating the Hotel by turning all of Owner's computers over to Plaintiff.[38]  The Motion lacks any evidentiary support.[39]  For instance, Plaintiff relies on demonstrably incorrect statements to establish that Plaintiff, as opposed to General Hotel Management, Ltd., owns the purported trade secrets.[40]  In addition, the only "evidence" supporting a need for an injunction to prevent misuse of trademarks is a hearsay statement from the former general manager that "on or about April 30, 2012, I was informed

---

[35] *See* Letter to Daniel Benavides dated May 4, 2012, attached as Exhibit E to the Ternan Declaration.

[36] *See* Letter to Daniel Benavides dated May 7, 2012, attached as Exhibit F to the Ternan Declaration.

[37] *See* Motion filed May 7, 2012.

[38] *See* Motion at 15 ("GHM respectfully requests that the Court enter an order . . . [c]ompelling Defendants to immediately turn over all copies of the electronic servers and computer terminals at the Hotel to GHM").

[39] None of the affiants testify that they have personal knowledge of the events described. *See* Affidavit of Hansjoerg Meier, Exhibit B to the Motion; Affidavit of Xavier Vazquez, Exhibit J to the Motion; Affidavit of Moustapha Guimei, Exhibit K to the Motion.

[40] For instance, the former General Manager Hans Meier defines Plaintiff as "GHM" and then testifies that "to ensure that GHM's standards and procedures are carried out uniformly at all GHM-managed properties, GHM has invested substantial resources in creating a variety of proprietary guidelines. . . ."  *See* Affidavit of Hansjoerg Meier ("Meier Affidavit") at 2, ¶ 6, Exhibit B to the Motion.  Plaintiff has no other properties and, therefore, it is incorrect to say that Plaintiff created any standards to ensure uniformity across its properties.  Mr. Meier is obviously referring to Plaintiff's parent, General Hotel Management, Ltd.

that, as of that date, room keys containing the GHM marks were still being used at the Hotel."[41] Finally, Plaintiff does not present any evidence that there is a risk of any disclosure of its allegedly privileged information.

**E.    After Filing Its Motion, Plaintiff Begins To Cooperate With Owner.**

On Thursday, May 10, 2012, the Director of Information Technology at the Hotel, Owner's on-site representative, a vendor retained by Plaintiff, and counsel for the parties met to discuss the development of a protocol for providing Plaintiff with a copy of the information on the servers so that Plaintiff could review the information and advise Defendants regarding what information it claims is proprietary.[42]   On May 17, 2012, Owner sent a letter to Plaintiff setting forth a protocol to utilize in the review of electronic data.[43]   On May 21, 2012, Plaintiff's vendor began copying that information.[44]   As of the date of this filing, Plaintiff has not identified for Owner any information that Plaintiff contends must be removed from Owner's computers.[45]

### III.  APPLICABLE STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy."[46] To secure an injunction, a party must establish four elements: (1) a substantial likelihood of success on the

---

[41] *See* Meier Affidavit at 5, ¶ 15.

[42] *See* Duggan Declaration at 2-3, ¶ 6.

[43] *See* Letter from James Renard dated May 17, 2012, attached as Exhibit G to the Ternan Declaration.

[44] *See* O'Keefe Declaration at 3, ¶ 8.

[45] *See* O'Keefe Declaration at 3, ¶ 9.

[46] *See Citizens for Police Accountability Political Committee v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009).

merits on one or more claims; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest.[47]

## IV.  ARGUMENTS AND AUTHORITIES

**A.  Plaintiff Has Failed To Meet The Requirements For Injunctive Relief To "Prevent Defendants From Using The GHM Marks."**

Plaintiff asserts that it is entitled to a preliminary injunction "to enjoin Owner from using GHM's marks or to allow Trevi and/or SMB from using those marks at the Hotel in breach of contract."[48]  Plaintiff's request for injunctive relief should be denied for four reasons.

First, Plaintiff has failed to establish a likelihood of success on any cause of action because  the GHM marks are not being used at the Hotel, Owner and Trevi took diligent steps to remove all GHM marks from the Hotel, and there is no intent to use the GHM marks at the Hotel in the future.[49]  The only "evidence" Plaintiff presents to show a use of a GHM mark is a single hearsay statement from an undisclosed witness that, on April 30, 2012, "room keys containing the GHM marks were still being used at the Hotel."[50]  Owner believes this is a reference to keys issued by Plaintiff to the condominium unit owners and, although Owner does not control individual unit owners, Owner has taken steps to retrieve the keys issued by Plaintiff by

---

[47] *See id.*

[48] *See* Motion at 13-14.

[49] *See* Siu Declaration at 6, ¶ 15; Mankarios Declaration at 3-4, ¶¶ 7-8.

[50] *See* Meier Affidavit at 5, ¶ 15.

deactivating those keys.[51]   Accordingly, Plaintiff has failed to present any evidence that any GHM mark is in use or will be in use imminently.

Second, Plaintiff cannot establish a likelihood of success because the trademarks at issue do not belong to Plaintiff.  The Management Agreement explicitly states that the "GHM Marks" belong to General Hotel Management, Ltd.,[52] and General Hotel Management, Ltd.—not Plaintiff—has registered the "GHM" trademark with the United States government.[53] Accordingly, Plaintiff has no standing to assert a claim that its trademarks are being misused; because it has no trademarks.

Third, while Plaintiff will not be harmed in the absence of an injunction because Owner is not using the GHM Mark, Owner will be harmed if the requested injunction is imposed.  In particular, the requested relief seeks to prohibit Owner from "reviewing" GHM marks.  Plaintiff stamped the "GHM" logo on a variety of non-public records relating to the operation of the Hotel—which, as discussed above, are Owner's property.   Therefore, the requested injunction would prevent Owner and Trevi from reviewing Owner's own books and records and thereby preclude them from operating the Hotel.  The requested relief simply harms Owner while providing no benefit to Plaintiff and, thus, the Motion should be denied.

---

[51] *See* Mankarios Declaration at 3-4, ¶ 8.

[52] *See* Management Agreement at 14, art. XVII(2) ("It is expressly acknowledged and agreed by the parties hereto that the GHMarks shall be the exclusive property of General Hotel Management, Ltd. . . .").

[53] *See* Printout from the Trademark Electronic Search System of the United States Patent and Trademark Office (showing that the trademark "GHM" belongs to General Hotel Management, Ltd.), attached hereto as Exhibit 7.

11

Fourth, issuing an injunction is not in the public interest.  Guest services, building and health code compliance, and condominium functions will be impeded if Owner and management are deprived of access to the Hotel's books and records merely because Plaintiff—without any authority to do so from Owner, its principal—stamped them with a GHM logo.   Accordingly, the Motion should be denied.

**B.    Plaintiff Has Failed To Meet The Requirements For Injunctive Relief To "Protect GHM's Privileged Documents."**

Plaintiff contends that it "is entitled to a temporary injunction preventing Defendants from keeping, accessing, and reading GHM's Privileged Documents."[54]  Plaintiff does not need, and is not entitled to, injunctive relief because Plaintiff has failed to establish fundamental elements required to establish an entitlement to a preliminary injunction.

First, Plaintiff has no likelihood of success on a cause of action relating to the privileged documents.  In fact, Plaintiff does not even identify a cause of action in the Motion  which would entitle it to a turn of privileged documents, much less cite evidence to support a likelihood of success.[55]  Moreover, Plaintiff can claim no likelihood of success because Owner is already working with Plaintiff to ensure that all privileged materials are turned over to Plaintiff.[56]  During the week immediately following the transition to new management, counsel for Plaintiff

---

[54] Motion at 8-9.

[55] See Motion at 8-9 (citing no evidence or a cause of action on which it is likely to succeed).

[56] Demand for return and refusal to return are essential elements of a claim for conversion.  See Gordon v. Beary, 444 Fed. App'x 427, 435 (11th Cir. 2011) ("The essence of an action for conversion is not the acquisition of property by the wrongdoer, but rather the refusal to surrender the possession of the subject personalty after demand for possession by one entitled thereto.").

was permitted to review any and all documents stored at the offices of the Hotel to assert a claim of privilege.[57]  Counsel for Plaintiff in fact took possession of hard-copy documents that Plaintiff asserts are privileged.[58]  Copies of numerous servers and desktop computers at the Hotel have been provided to counsel for Plaintiff for the purposes of analyzing whether Plaintiff wishes to assert a privilege over particular communications.[59]  Once Plaintiff has reviewed the electronic information and identified privileged communications, Owner will delete from its systems any communications that it agrees are privileged and, in the event of a dispute regarding whether a communication is privileged, Owner intends to refrain from reviewing such communications until a court or tribunal resolves the question of privilege.  In short, Plaintiff cannot show that Owner intends to retain possession or review any privileged communications, and therefore, cannot establish a likelihood of success on any cause of action.[60]

---

[57] *See* Duggan Declaration at 2, ¶ 4.

[58] *See* Duggan Declaration at 2, ¶ 4; Declaration of Scott Blair ("Blair Declaration") at 2, ¶ 4, attached hereto as Exhibit 5.

[59] *See* Email from Daniel Benavides dated June 4, 2012, attached as Exhibit H to the Ternan Declaration; Ternan Declaration at 2, ¶ 10.

[60] Although they have no knowledge of the contents of the document(s) that Plaintiff alleges to contain privileged attorney-client communications, Owner and SMB note that, as Owner's former agent, Plaintiff was obligated to "initiate any necessary legal actions or proceedings" on Owner's behalf with respect to operations-related contract matters.  *See* Management Agreement at 9, art. VII, § 2.9.  Plaintiff was also obligated, on Owner's behalf, to "[a]rrange for compliance with the Law . . . in connection with the Hotel."  *Id.* at 8, art. VII, § 2.8.  Thus, the Management Agreement contemplates legal matters in which Plaintiff would communicate with attorneys but which would <u>not</u> be privileged as to Plaintiff's principal namely, Owner.

Second, Plaintiff will not suffer any irreparable harm in the absence of an injunction. Owner does not intend to review any of Plaintiff's privileged communications,[61] and with one inadvertent exception occurring shortly after the transition to new management,[62] Owner has not seen any of Plaintiff's privileged communications.[63]   Accordingly, there is no reason to believe that Plaintiff will suffer irreparable injury in the absence of an injunction.

**C.     Plaintiff's Perfunctory Trade Secret Analysis And Evidence Fail To Justify Any Injunctive Relief.**

Plaintiff contends that it "is entitled to a temporary injunction to enjoin Defendants from accessing and using GHM's Trade Secret Materials."[64]   Tellingly, Plaintiff does not cite <u>any</u> evidence in its argument section to support its request for relief.  When a moving party fails to identify how the evidence supports its request for extraordinary injunctive relief, as is the case here, it is extremely difficult for the responding party to succinctly respond.  Nonetheless, there are at least three reasons why the requested relief cannot be granted.

**1.     <u>The Management Agreement assigns ownership of the information to Owner.</u>**

The Management Agreement between the parties identifies who owns the information stored at the Hotel.  In particular, Article XI, Section 1 of the Management Agreement provides:

The books of account and all other records relating to, or reflecting, the operation of the Hotel shall be kept at the Hotel and shall be available to the Owner and its

---

[61] *See* Siu Declaration at 6, ¶ 17; O'Keefe Declaration at 5, ¶ 14; Mankarios Declaration at 4-5, ¶ 10.

[62] *See* Blair Declaration at 1-2, ¶ 3-4.

[63] *See* Blair Declaration at 2, ¶5; Siu Declaration at 6, ¶ 17; O'Keefe Declaration at 5, ¶ 14; Mankarios Declaration at 4-5, ¶ 10.

[64] *See* Motion at 9-12.

duly authorized representatives for examination, audit, inspection and copying. . . . All such books and records shall be the property of the Owner . . . Upon the termination of the Agreement, all of such books and records up to the date of termination shall forthwith be delivered up to Owner so as to ensure the orderly continuance of the operation of the Hotel. . . .[65]

This provision provides that all records relating to, or reflecting, the operation of the Hotel belong to Owner, not Plaintiff.  In light of the fact that Plaintiff and GHM agreed in Article XI(1) of the Management Agreement that all records in any way "relating to" the "operation of the Hotel" are "the property of the Owner," it does not matter:   (a) that Plaintiff and/or GHM expended time, effort, and money in creating or compiling these materials; or (b) that those materials may have independent economic value or provide a competitive edge to the owner thereof.  As a matter of law, those materials belong to Owner  and not to Plaintiff or GHM.

The cases cited by Plaintiff are thus inapposite because, unlike here, the contractual language in the *Four Seasons* case provided no rights in the disputed materials to the owner and vested ownership with the operator,[66] and the other cases involved former employees taking

_____

[65] *See* Letter from James Renard dated April 18, 2012, at 1, attached as Exhibit C to the Ternan Declaration.

[66] *See Four Seasons Hotels and Resorts B.V. v. Consorcio Barr, S.A.*, 267 F. Supp. 2d 1268, 1280 (S.D. Fla. 2003), *aff'd in part, rev'd in part on other grounds*, 138 F. App'x 297 (11th Cir. 2005) ("The plain language of the License Agreement provides that Consorcio may only be entitled to hard copy print-outs of guest histories upon request. The License Agreement vests Consorcio with no rights to Four Seasons' raw data in electronic form, nor does it provide Consorcio with any rights to the entire guest profiles maintained in Fidelio. (License Agreement § 5.05, Plaintiffs' Exhibit 1).  Additionally, nowhere in the License Agreement is Consorcio provided rights to the information contained in the Micros or Scala systems.").

information that indisputably belonged to the former employer.[67]  Based on the clear language of the Management Agreement, almost all of the information identified by Plaintiff as a "trade secret" actually belongs to Owner because it relates to the operation of the Hotel.

2.      **To the extent Owner does not own the purported "trade secrets," neither does Plaintiff.**

Plaintiff identifies two categories of information that do not relate to or reflect the operation of the Hotel:  "sales and marketing materials prepared by GHM for . . . other GHM-managed properties" and "confidential information and materials belonging to GHM's affiliates."[68]  While in principle it is clear that such materials do not belong to Owner, in practice it is difficult to separate information that relates to the Hotel from information that does not (especially when GHM improperly commingled such information with Hotel-related information).  As set forth above, Owner is working with GHM to accomplish this goal.[69]  Nonetheless, Owner is compelled to point out that *Plaintiff* does not own those materials.  In fact, Plaintiff admits the information is owned by other GHM-affiliated entities.[70]

3.      **Plaintiff has failed to establish that any of the information constitutes a trade secret.**

Under the Florida Uniform Trade Secrets Act, a "trade secret" is

---

[67] *See East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 933 (Fla. 2d DCA 2001); *AutoNation, Inc. v. Maki*, No. 03-18896, 2004 WL 1925479, at *3-4 (Fla. Cir. Ct. Aug. 25, 2004), aff'd, 895 So. 2d 453 (Fla. 4th DCA 2005).

[68] *See* Motion at 3.

[69] *See supra* nn. 42-45 and accompanying text.

[70] *See* Motion at 3 ("(v) confidential information and materials belonging to GHM's affiliates.").

16

[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[71]

Plaintiff has submitted no evidence establishing that the information at issue derives independent economic value, is not generally known, and is not readily ascertainable by proper means.[72]   Moreover, Plaintiff has submitted no evidence of any efforts made to maintain the secrecy of information.[73]   In fact, as shown below, none of the information identified by Mr. Meier constitutes a trade secret.

　　　　a.　　**Purported "proprietary guidelines."**   In paragraph 6 of his affidavit, Mr. Meier describes in vague terms certain purported "proprietary guidelines," such as "how to set a dinner table 'GHM style'" and the standards for "all printed materials at GHM-managed properties, including the manager's business cards and guest letters."[74]   In other words, Plaintiff is claiming that things that every <u>guest</u> could experience, and thereby reproduce, are somehow "secrets" that must be protected from disclosure.   These materials, which "relate to" and/or "reflect" the operation of the Hotel, are not "trade secrets."

　　　　b.　　**Six year old manager handbook.**   In paragraph 7 of his affidavit, Mr. Meier identifies a handbook regarding the operation of the Hotel created "approximately six

---

[71] FLA. STAT. § 688.002(4).

[72] *See* Meier Affidavit at 2-5, ¶¶ 6-13.

[73] The only thing Mr. Meier states on the subject is that the information was never shared with Owner or third-parties.   He does not identify any efforts made to maintain the secrecy of information, or even how he purports to know that the information was not shared.

years ago."[75]   It would be incredible to believe, and Mr. Meier does not even attempt to claim, that this handbook derives independent economic value.   Accordingly, the handbook (which, again, "relates to" Hotel operations) is not a trade secret.[76]

   **c.** **Employee information.** In paragraph 8 of his affidavit, Mr. Meier testifies regarding employee-related information.   Although Owner has already turned over much of this material and intends to return the rest in accordance with the protocol agreed to with Plaintiff, it is nonetheless clear that this information is not a trade secret.   In particular, "photographs of GHM employees" or the formulas used to calculate disclosed incentive payments do not derive independent economic value, and Mr. Meier does not purport to claim it does.

   **d.** **Guest profiles.** In paragraph 9 of his affidavit, Mr. Meier discusses GHM's purported use of guest profile information across its chain.[77]   While GHM may have collected and used such information at other hotels, the guest profile data at the Hotel did not originate with GHM.[78]   The information loaded into the guest databases at the Hotel was generated at the site[79] and was not based on a centralized corporate service.[80]

---

  [74] *See* Meier Affidavit at 2, ¶ 6.

  [75] *See* Meier Affidavit at 3, ¶ 7.

  [76] The handbook is, of course, a record relating to the operation of the Hotel, which belongs to Owner under the Management Agreement.

  [77] Mr. Meier again makes incorrect statements in this paragraph by failing to distinguish between Plaintiff and General Hotel Management, Ltd.

  [78] *See* O'Keefe Declaration at 3-4, ¶¶ 11-12.

  [79] *See* O'Keefe Declaration at 3-4, ¶¶ 11-12.

e.   **The purported "special relationships" with travel agencies.**   In paragraph 10 of his affidavit, Mr. Meier claims that a supposed special relationship exists between Plaintiff[81] and certain unnamed "elite travel agencies."[82]   Because Plaintiff's allegations are so vague, it is impossible for Owner to ascertain what, if any, trade secret information is in the possession of Owner.   The only concrete example of the supposed relationship is the purported "highly unusual honor of a 'Leading Hotels of the World' designation for the Hotel before it even opened."[83]   Because of its strong reputation in the hospitality industry and long-standing relationships, Trevi was able to secure a "Leading Hotels of the World" designation upon assuming management of the Hotel.[84]   In short, it is unclear what, if any, secretive information relating to travel agents Plaintiff possessed but, in all likelihood, the information is readily ascertainable and not a trade secret.[85]

f.   **Information belonging to other GHM entities.**   In paragraphs 11 and 12 of his affidavit, Mr. Meier describes information belonging to GHM entities other than Plaintiff. Nothing in Mr. Meier's conclusory descriptions of the affiliate information suggests that the information derives independent economic value.   In fact, the information is described as semi-

---

[80] *See* O'Keefe Declaration at 3-4, ¶¶ 11-12.

[81] Mr. Meier again makes incorrect statements in this paragraph because such relationships likely involve General Hotel Management, Ltd. ("GMH"), not Plaintiff.

[82] *See* Meier Affidavit at 4, ¶ 10.

[83] *See* Meier Affidavit at 4, ¶ 10.

[84] *See* Mankarios Declaration at 3, ¶ 6.

[85] *See* Mankarios Declaration at 2-3, ¶ 6.

public sales and marketing information.  Accordingly, it is unlikely that this information, which Mr. Meier acknowledges does not belong to Plaintiff in any event, constitutes trade secrets.

        **g.**      **Meeting minutes.**  In paragraph 13 of his affidavit, Mr. Meier describes again, in a generic fashion, that minutes and notes of Hotel-related meetings were created.  Mr. Meier provides no testimony regarding how <u>any</u>, much less <u>all</u>, such minutes and notes derive independent economic value.  Moreover, many of the subjects one would expect to be addressed in such minutes and notes, such as the dates on which maintenance occurred, changes in occupancy, and the other day to day events at the Hotel, are not trade secrets; they are merely records of events that Owner may need to understand in order for the Hotel to be properly managed.

## V. <u>CONCLUSION AND REQUEST FOR RELIEF</u>

      For the foregoing reasons, Owner requests that the Court enter an order:  (1) denying Plaintiff's Motion; and (2) granting Owner such other relief to which it is entitled and which the Court deems just and proper.

Dated: June 15, 2012          Respectfully submitted,
       Miami, Florida


s/Elizabeth B. Honkonen             
Richard H. Critchlow, Esq.
(Florida Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen, Esq.
(Florida Bar No. 149403)
ehonkonen@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida  33131-4327
Telephone:    (305) 373-1000
Facsimile:    (305) 372-1861

- and -

William A. Brewer III
(admitted *pro hac vice*)
wab@bickelbrewer.com
James S. Renard
(admitted *pro hac vice*)
jsr@bickelbrewer.com
Jack G. B. Ternan
(admitted *pro hac vice*)
jgt@bickelbrewer.com
BICKEL & BREWER
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas  75201
Telephone:    (214) 653-4000
Facsimile:    (214) 653-1015

**COUNSEL FOR DEFENDANT SETAI**
**OWNERS LLC AND SMB MANAGEMENT**
**LLC**

21

## <u>CERTIFICATE OF SERVICE</u>

**I certify** that on June 15, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Elizabeth B. Honkonen

22

**SERVICE LIST**
*GHM (South Beach LLC) v. Setai Owners LLC, et al.*
**CASE NO. 1:12-cv-21932-KMM/TORRES**
**United States District Court, Southern District of Florida**

Kenneth R. Hartmann, Esq. (Florida Bar No. 664286)
krh@kttlaw.com
Daniel F. Benavides, Esq. (Florida Bar No. 81675)
dfb@kttlaw.com
Douglas A. Wolfe, Esq. (Florida Bar No. 28671)
daw@kttlaw.com
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida  33134
Telephone:     (305) 372-1800
Facsimile:     (305) 372-3508
*Counsel for Plaintiff*
**[VIA CM/ECF]**

Richard H. Critchlow, Esq. (Florida Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen, Esq. (Florida Bar No. 149403)
ehonkonen@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
Suite 1100
Miami, Florida  33131-4327
Telephone:     (305) 373-1000
Facsimile:     (305) 372-1861
*Counsel for Defendants Setai Owners LLC and
SMB Management LLC*
**[VIA CM/ECF]**

William A. Brewer, III (admitted *pro hac vice*)
wab@bickelbrewer.com
James S. Renard (admitted *pro hac vice*)
jsr@bickelbrewer.com
Jack G. Ternan (admitted *pro hac vice*)
jgt@bickelbrewer.com
Bickel & Brewer
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas  75201
Telephone:     (214) 653-4000
Facsimile:     (214) 653-1015
*Counsel for Defendants Setai Owners LLC and
SMB Management LLC*
**[VIA CM/ECF]**

23