## EXHIBIT A

BICKEL & BREWER

ATTORNEYS AND COUNSELORS
4800 COMERICA BANK TOWER
1717 MAIN STREET
DALLAS, TEXAS 75201
PHONE: (214) 653-4000
FAX: (214) 653-1015

www.bickelbrewer.com

767 FIFTH AVENUE
50TH FLOOR
NEW YORK, NEW YORK 10153
(212) 489-1400

May 4, 2012

**VIA E-MAIL AND U.S. MAIL**

Daniel F. Benavides, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Miami, FL 33134

Re: Termination of Management Agreement dated March 20, 2000, between Setai Owners LLC ("Owner") and General Hotel Management Ltd., as Operator, as amended (the "Management Agreement"), relating to the management and operation of the Setai Resort & Residences (the "Hotel") located in Miami Beach, Florida

Dear Danny:

This replies to your letter dated April 24, 2012.

Your letter is essentially a non-response to my correspondence dated April 18, 2012. Despite the fact that both the contract and agency law make clear that almost all of the information referenced in your letter belongs to Owner, you continue to demand, without authority or support, that those documents and data be turned over to you. In addition, you have failed to respond to many of our inquiries. It is impossible to resolve the "open transition issues amicably" when you refuse to provide any legal or factual basis for your contentions.

A.    **Response To Your "Demands"**

   1.    **Alleged personal property**

You reiterate your demand for the rolodexes of Messrs. Meier and Abramowitz and a St. Regis rental program agreement. You did not respond to our inquiry regarding whether the rolodexes and agreement were used or intended to be used in the performance of their duties as Owner's sub-agents. Based on your prior statements to Mr. Ternan, it appears that these materials are the property of Owner. Until you provide us a legal or factual basis for concluding otherwise, Owner will retain possession of these materials.

Daniel F. Benavides, Esq.
May 4, 2012
Page 2

2. <u>GHM marks</u>

You reiterate your demand that Owner cease using the GHM marks at the Hotel. Owner believes that all such marks have been physically removed or removed from public view. If you have contrary facts of which Owner is unaware, please share them with us.

3. <u>Purported confidential, proprietary, and privileged information.</u>

You reiterate your demand that Owner turn over purported confidential, proprietary, and privileged information. Owner has returned most, if not all, of the SOP manuals, employee files, and privileged hard-copy documents in its possession. With respect to the electronic data, GHM has provided contradictory instructions and failed to clarify its request. Do you want us to segregate the electronic information residing on Owner's computers that may be GHM's property or do you want us to leave the data where it was residing prior to the transition? It is not possible to do both of these things. It is Owner's preference to segregate the information.

4. <u>Accounting information</u>

In your letter, you again request a financial statement for March and incorrectly state that "all financial information was shared with Setai Owners throughout the course of the relationship between the parties." Prior to the termination, GHM repeatedly failed to provide basic financial information to Owner. In fact, GHM's lack of professionalism when responding to Owner's requests for information was one of the grounds for terminating the Management Agreement. Now that Owner has access to the accounting records, it is clear that the little information that GHM did provide to Owner was not accurate.

5. <u>The "ghmamericas.com" email server</u>

In your letter, you again demand that Owner cease all use of the ghmamericas.com email accounts and refrain from tampering with such accounts. As stated in previous correspondence, the email accounts have been disabled and are not being used. Owner continues to ask that GHM work with us to determine a process for separating the information in the email accounts belonging to Owner from the information belonging to GHM.

6. <u>Access to server data</u>

In the last sentence of your letter, you request access to the servers and/or copies of the servers. On what basis does GHM contend it is entitled to access Owner's servers or copies of the data on Owner's servers?

Daniel F. Benavides, Esq.
May 4, 2012
Page 3

### B. Reiteration Of Prior Requests

GHM has not responded to several inquiries raised in prior correspondence, including the following.

#### 1. Turnover of records belonging to Owner

As noted in my letter dated April 18, 2012, the Management Agreement provides that "[u]pon termination of the Agreement, all of such books and records up to the date of termination shall forthwith be delivered up to Owner." It has been a month since the termination of the agreement, and GHM has not turned over any records relating to the Hotel, including, but not limited to, originals and copies located in GHM's corporate offices and other GHM-managed resorts, concerning, *inter alia*, the Hotel's guests, financial performance, and GHM's Hotel-related corporate audits. When will we be receiving that information?

#### 2. Turnover of property belonging to Owner held by GHM employees

You previously stated that you would prepare a list of property that is being held by GHM employees and that was paid for by Owner or used by the employee as part of the operation of the Hotel. We have not received the list. When will we be receiving that information?

#### 3. Document and data preservation

What steps has GHM taken to prevent the destruction of documents and data relevant to the pending arbitration? We have received no response to our past inquiries.

#### 4. Contracts

You had previously requested that Owner provide you with contracts between GHM and third-parties. I responded that Owner is unaware of any such contracts that do not involve the Hotel, and that if you were aware of such contracts, I requested that you identify such materials. You have not identified any contracts that GHM contends were between GHM and third-parties that were unrelated to the Hotel. Accordingly, it appears that GHM contends that there are no such contracts.

#### 5. "GHM product knowledge materials"

You have previously requested that Owner turn over "GHM product knowledge materials," and I requested that GHM provide further clarification regarding what documents or data was being requested. GHM has provided no clarification.

Daniel F. Benavides, Esq.
May 4, 2012
Page 4

C. **Additional Open Issues**

The following issues are also outstanding:

1. **Carlos H. Lopez v. Setai Owners LLC and GHM (South Beach) LLC**

We have received the complaint and jury demand in the above-referenced case. Based on Owner's initial review of the complaint, it appears that the conduct alleged, if true, constitutes gross negligence or willful misconduct by GHM. Accordingly, Owner likely has no indemnification obligation with respect to the claims asserted in that case. GHM should prepare to defend itself in the litigation.

It has come to our attention that GHM has sought to retain Patrick DeBlasio, Esq. of Littler Mendelson, P.C. to represent it in this employment matter. Mr. DeBlasio has requested that Owner sign a conflict waiver. Owner is willing to waive any conflict presented by Mr. DeBlasio's representation of GHM in the defense of claims asserted by Mr. Lopez, but is not willing to waive any conflict that may be presented by Mr. DeBlasio or his firm representing GHM in a manner adverse to Owner, which would include filing cross-claims against Owner in that employment case or otherwise initiating a separate action against Owner with respect thereto.

2. **GHM's reversal of the 401(k) contributions**

The information provided by GHM regarding the amount of the 401(k) contributions outstanding, and attempting to explain (unsuccessfully so) why the pre-termination contributions were reversed, is inadequate to satisfy Owner's concerns. Because Owner does not have access to the information necessary to compute or verify the appropriate amount for the 401(k) contributions, GHM should promptly pay the amount of the outstanding contributions and provide Owner an accounting of what is owed.

D. **Conclusion**

Owner would like to resolve the foregoing issues by agreement and as soon as possible. However, as indicated, we need additional information from you and your clients in response to our outstanding inquiries. We hope that your firm and GHM will cooperate and work with us to further pare down, if not eliminate, the list of disputed transition-related matters – so that we can focus on the arbitration and the claims asserted therein.

Daniel F. Benavides, Esq.
May 4, 2012
Page 5

       We look forward to your response.

                                        Sincerely,

                                        James S. Renard

cc:    Kenneth R. Hartmann, Esq.

5267101.5
2159-02