UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 12-cv-21932-KMM

GHM (SOUTH BEACH) LLC,

      Plaintiff,

v.

SETAI OWNERS LLC, TREVI LUXURY
HOSPITALITY GROUP, INC., and SMB
MANAGEMENT LLC,

      Defendants.
_____/

**RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT SETAI OWNERS LLC'S MOTION FOR
MORE DEFINITE STATEMENT AND MOTION TO DISMISS [D.E. 11]**

Plaintiff, GHM (South Beach) LLC ("GHM" or "Plaintiff"), files this Response and Incorporated Memorandum of Law in Opposition to Defendant, Setai Owners LLC's ("Owner"), Motion for More Definite Statement and Motion to Dismiss [D.E. 11], and states:

**I.  OWNER'S MOTION TO DISMISS SHOULD BE DENIED**

  **A.  Legal Standard**

A movant bears a heavy burden on a 12(b)(6) motion to dismiss. Motions to dismiss are viewed with disfavor and are rarely granted. *See Sec. and Exch. Comm'n v. Dunlap*, 2002 WL 1007626, at *1 (S.D. Fla. March 27, 2002); *see also Vernon v. Medical Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1555 (S.D. Fla. 1996) (same). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). A court's function on a motion to dismiss is not to weigh evidence which might be presented at

trial, but merely to determine whether the complaint itself is legally sufficient. *See In re Arizen Homes, Inc.*, 2009 WL 393863, at *2 (Bankr. S.D. Fla. 2009) (quotations and citations omitted). A plaintiff must allege factual allegations to demonstrate a right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). However, this rule does not impose a probability requirement at the pleading stage, but simply calls for enough allegations to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.*

In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A court must limit its evaluation on a motion to dismiss to the pleadings and written instruments attached as exhibits to the complaint. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1279 (S.D. Fla. 2008).

**B. Count II (Breach of Duty of Good Faith and Fair Dealing) Should Not Be Dismissed**

The implied covenant of good faith and fair dealing is a "gap-filling default rule" that is "usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." *Publix Super Markets, Inc. v. Wilder Corp.* of Del., 876 So. 2d 652, 654 (Fla. 2d DCA 2004); *see also Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1097 (noting the covenant limits a party's ability to act capriciously when exercising its discretion); *Ernie Haire Ford, Inc. v. Ford Motor Co.,* 260 F.3d 1285, 1291 (11th Cir. 2001) ("[O]ne party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations."). In other words, "'where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act

2

capriciously to contravene the reasonable contractual expectations of the other party.'" *Abels v. JPMorgan Chase Bank, N.A.,* 678 F. Supp. 2d 1273, 1278 (S.D. Fla. 2009) (quoting *Cox*, 732 So.2d 1097–98).

The Management Agreement between GHM and Owner, attached to the Complaint as Exhibit A, provides that GHM "shall have the exclusive right and obligation to direct, supervise and control the management and operation of the Hotel generally…and to determine the plans and policies to be followed." *See* Management Agreement at Article VII(1). Moreover, Owner agreed "upon request by [GHM] to sign promptly and without charge any applications for Licenses, which [GHM] may reasonably be request be signed, and which [GHM] shall be obligated to obtain." *Id.* at Article I(2).

GHM alleges that Owner breached its duty of good faith and fair dealing, *inter alia,* by purposely engaging in a pattern to exclude and evict GHM from the Hotel despite Owner agreeing to a 15 year term.[1] Complaint at ¶59. To support its allegations, GHM lists a litany of capricious and improper actions (or refusals to act) taken by Owner over the years that were intended to sabotage or frustrate GHM's operation of the Hotel, with the ultimate goal of fabricating "cause" to remove GHM in order to sell the Hotel without the burden of a management contract. *Id.* at ¶16. For example, Owner failed to provide competent assistance in connection with key renovation projects, failed to provide adequate back of house and engineering facilities for GHM, unreasonably delayed signing important permits, assigned incompetent and unprepared asset managers to oversee Hotel operations, and deliberately attempted to destroy the relationship between GHM and the condominium owners. *Id.* at ¶¶17-19. These bad faith acts (or refusals to act) may have been within Owner's discretion, but were

---

[1] Hotel operators customarily require long-term management contracts in order to compensate the hotel

contrary to GHM's reasonable expectations under the Management Agreement and negatively impacted the Hotel's and GHM's reputation and profits. Count II is intended to "fill in the gaps" not otherwise covered by Count I of the Complaint, and compensate GHM for these damages. As such, Count II does not duplicate Count I and should not be dismissed.

### C. Count III (Declaratory Relief) Should Not Be Dismissed

Owner argues that Count III should be dismissed because the arbitrators, not the Court, should decide whether the arbitration agreement was waived or is inoperative. This issue has been fully briefed by the parties in connection with Plaintiff's Motion to Remand [D.E. 4], which is pending before this Court.

As further discussed in the Motion to Remand, Owner removed this case solely pursuant to the Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which raises issues of subject matter jurisdiction. The plain language of the Convention dictates that the decision of whether an agreement is inoperative or incapable of being performed must be made by the Court, not the arbitrators. 21 U.S.T. 2517, Article II(3). The Convention specifically states:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed. (emphasis added) *Id.*; *see also Bautista v. Star Cruises*, 396 F.3d 1289, at n.9 (11th Cir. 2005).

Because the Convention deals with a federal court's subject matter jurisdiction, it makes sense that arbitrability should be decided by the Court. Otherwise, arbitrators would be deciding the Court's subject matter jurisdiction.

---

operator for the high up-front cost and investment associated with opening, staffing, and branding a hotel.

4

Owner's argument that the arbitrators, not the Court, should decide whether the arbitration agreement was waived or is inoperative in a case removed pursuant to the Convention is expressly refuted by Judge Cooke's decisions in *Tok v. Royal Caribbean Cruises, Ltd.,* 2010 WL 1433175 (S.D. Fla. 2010) and *Lawrence v. Royal Caribbean Cruises, Ltd.,* NO. 09-20930-CIV-COOKE, (S.D. Fla. 2009). Both *Tok* and *Lawrence* were cases removed under the Convention, and in both cases the court, not the arbitrators, determined whether defenses to arbitration applied. These cases are consistent with the plain language of the Convention which dictates that the Court must decide whether defenses to arbitration apply. And, because the question of arbitrability is intertwined with the threshold issue of whether there is removal and/or subject matter jurisidiction, the Court, not the arbitrators, must decide the issue.

Furthermore, the cases cited by Owner for the proposition that arbitrators should decide arbitrability defenses do not apply to cases removed under the Convention. Owner relies heavily on *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002), which involved a dispute over whether the court or arbitrators should decide applicability of a time limitations period contained in the National Association of Securities Dealers arbitration rules. *Howsam* did not involve the Convention, or any analogous authority that expressly requires the court to determine whether an arbitration agreement is inoperative or incapable of being performed. Moreover, *Howsam* was not even mentioned by Judge Cooke in *Tok* and *Lawrence*, which decisions came after *Howsam*. Owner also relies on several cases[2] that cite *Howsam* but, like *Howsam* none of these cases grapple with the plain language of the Convention, which requires the Court to determine whether the arbitration agreement is inoperative or incapable of being performed.

---

[2] *Grigsby & Associates, Inc. v. M Securities Inv.,* 664 F.3d 1350 (11th Cir. 2011); *PTA-FLA, Inc. v. ZTE USA, Inc.*, 2011 WL 5024647 (M.D. Fla. 2011).

### D. Count IV (Tortious Interference with Business Relationships) Should Not Be Dismissed

#### 1. GHM has properly pled a cause of action for tortious interference.

To state a claim for tortious interference, a plaintiff must allege the following elements: (1) the existence of a business relationship; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference. *Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air Ambulance Services, LLC*, 2012 WL 33150 at *2 (M.D. Fla. 2012). GHM alleges that (1) at the time of the illegal raid orchestrated jointly by all the Defendants, the employees at the Hotel were GHM's employees; (2) Owner knew that the employees at the Hotel were GHM's employees and that Owner knew or should have known that the business relationship between GHM and its employees was a valuable asset to GHM; (3) without any justification, Owner directed and participated in the illegal raid of the Hotel and intentionally and improperly forced GHM's employees, by threat of termination, deportation and/or eviction, to end their business relationship with GHM and work for Owner and its accomplices; and (4) as a direct and proximate result of the conduct of Owner and its accomplices, GHM has suffered and continues to suffer substantial money damages. *See, e.g.,* Complaint at ¶¶70-75. Accordingly, GHM has properly pled a cause of action against Owner for tortious interference.

#### 2. Owner's "privilege" affirmative defense is without merit and not a basis for 12(b)(6) dismissal.

Owner argues that Count IV should be dismissed because its actions were privileged. According to Owner, its actions were privileged and/or justified because (a) Owner did not have specific intent to harm GHM and (b) GHM's employees were Owner's sub-agents. Owner's privilege defenses are without any merit.

It is beyond dispute that Owner acted with specific intent to harm GHM (or at least knowledge that harm to GHM would occur) when it stormed the Hotel in the middle of the night and then forced GHM's employees, by threat of termination, deportation and/or eviction, to end their business relationship with GHM and work for Owner and its accomplices. This was clearly not a case of "a competitor hiring away an employee whose employment is terminable at will," as Owner would like to portray.

Moreover, Setai Owners and GHM expressly agreed that "nothing in [the Management Agreement] shall be construed as creating a tenancy, partnership, joint venture or any other relationship between the parties." *See* Management Agreement, attached to the Complaint as Exhibit A, Article VII (1). Accordingly no relationship, other than a contractual relationship, was created between GHM and Setai Owners, including an agency relationship.

Setting aside the merits of Owner's privilege defense (or lack thereof), whether Owner was privileged and/or justified to interfere with GHM's business relationship with its employees is an affirmative defense, for which Owner bears the burden of proof, that raises additional disputed questions of fact (in addition to questions of law) that Owner will need to establish including: (1) the intent of Owner when it committed its actions, (2) that GHM was an agent of Owner, and (3) that GHM's employees were subagents of Owner. As such, Owner's privilege defense is not an appropriate basis for dismissal.

E. **Count V (Tortious Interference with Business Relationships) Should Not Be Dismissed**

1. **GHM has properly pled a cause of action for tortious interference.**

GHM has alleged that (1) at the time of the illegal raid orchestrated by Owner and its accomplices, GHM had entered into separate contracts to manage certain private residences at the Setai, (2) Owner knew about these contracts; (3) without any justification, Owner

7

participated in the illegal raid of the Hotel and intentionally and improperly interfered with GHM's ability to maintain and continue these separate contracts with the private residence owners; and (4) as a direct and proximate result of the conduct of Owner and its accomplices, GHM has suffered and continues to suffer substantial money damages. *See, e.g.,* Complaint at ¶¶77-80. Accordingly, GHM has properly pled a cause of action against Owner for tortious interference with its condominium unit management contracts.

### 2. Owner's "privilege" affirmative defense is without merit and not a basis for 12(b)(6) dismissal.

In support of its motion to dismiss Count V, Owner again raises the <u>affirmative defense</u> that its actions were justified and/or privileged because Owner did not have specific intent to harm GHM and it was acting merely to protect its own business interests as GHM's principal. As discussed above, Owner's privilege/justification defense is without any merit.

Notwithstanding the merits (or lack thereof), the defense raises several disputed questions of fact (in addition to questions of law) that Owner will need to establish including: (1) the intent of Owner when it committed its actions and (2) that GHM was an agent of Owner. As such, Owner's privilege defense is not an appropriate basis for dismissal.

### F. Count VII (Violation of Florida Trade Secrets Act) Should Not Be Dismissed

### 1. GHM's confidential materials meet the statutory definition of a "trade secret."

The Florida Uniform Trade Secrets Act (FUTSA) "defines a trade secret as something that (a) derives independent economic value from not being generally known to the public; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Allegiance Healthcare Corp. v. Coleman,* 232 F.Supp. 2d 1329, 1335 (S.D. Fla. 2002) (citing § 688.002(4), Fla. Stat. (2002); *Am. Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407, 1410 (11th Cir.1998)). "Whether information is a trade secret is a question of fact." *Id.* (citing

8

*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1292 (S.D.Fla.2001); *All Pro Sports Camp., Inc. v. Walt Disney Co.,* 727 So.2d 363, 368 (Fla. 5th DCA 1999). "Accordingly, on a motion to dismiss, the movant must present 'clear authority' that the information that the plaintiff identifies is not protected." *Id.* (citing *Del Monte*, 136 F.Supp.2d at 1292.).

In the Complaint, GHM alleges that its confidential trade secret materials, including standard operating procedure manuals, training manuals, employment files, and privileged materials, consist of unique and specific information with economic value to others in the hotel industry. Complaint at ¶¶87-89. GHM further alleges that it took strict measures to protect the confidentiality of the trade secrets. Complaint at ¶90. Accordingly, GHM has sufficiently pled that its confidential materials meet the statutory definition of a "trade secret."

Owner argues that GHM's confidential materials are not "trade secrets" because (1) the trade secret materials were readily ascertainable because Setai Owners had a right under the Management Agreement to inspect the materials and (2) GHM failed to identify specific measures it took to protect the trade secrets, noting that standard operating procedure manuals were located in public areas and <u>some</u> computer servers did not have password protections.

<u>First</u>, GHM disputes Owner's interpretation of Art. XI §1 of the Management Agreement, which allows for inspection by Owner only of the <u>financial</u> books and records of the Hotel, and not of GHM's trade secret materials such as employee files, standard operating procedure manuals, and privileged communications. Although GHM often shared financial information with Owner upon request, GHM never shared its trade secret materials with Owner or any third party.[3] Even if GHM had shared some of its trade secret materials with Owner in connection

---

[3] In fact, sharing the employee files, which contain medical information, with Owner or a third party

9

with management of the Hotel, GHM did not and would never have authorized Owner to share such information with third parties. In any event, ownership of the trade secret materials is a question of fact and not appropriate for a motion to dismiss.

Second, although GHM took significant steps to protect its trade secrets, GHM is not required to identify, at this stage in the proceedings, the specific measures it took to protect the confidentiality of its trade secret materials. The adequacy of the measures taken by GHM to protect its trade secrets is a question of fact. *See Allegiance Healthcare Corp. v. Coleman,* 232 F.Supp. 2d at 1335. Even if the standard operating procedure manuals were located throughout the Hotel for access by Hotel managers and some servers were not password protected, these facts certainly do not present "clear authority" that GHM did not take any steps to protect its trade secret materials. *Id.* Accordingly, Count VII should not be dismissed.

**2. GHM's trade secrets were acquired by improper means.**

Owner argues that Count VII should be dismissed because GHM has failed to plead "misappropriation" of its trade secrets. According to Owner, GHM does not allege that its trade secrets were acquired by "improper means." Contrary to Owner's assertions, GHM has alleged that its trade secrets were acquired by the Defendants by force during an illegal, midnight raid of the Hotel orchestrated by Owner and its accomplices. It is difficult to imagine a more "improper" means of acquiring the GHM's trade secrets and a clearer set of facts to establish misappropriation of GHM's trade secrets by the Defendants.

**3. GHM owns its trade secrets.**

Common sense dictates that GHM owns, or has an ownership interest in, the trade secret materials it kept at the Hotel, including the employee files for GHM employees, standard

---

would have been a violation of HIPAA.

10

operating procedure manuals, and its privileged and confidential communications. Although the Complaint sometimes refers to GHM's parent companies and affiliates in order to add context to the actions committed by the Defendants, GHM has clearly and unequivocally alleged that it owns the trade secret materials at issue. *See* Complaint at ¶92. To the extent Owner wishes to dispute this allegation, the discovery process will afford Owner the opportunity to explore further the factual basis of GHM's ownership interest in the trade secret materials. Accordingly, Count VII should not be dismissed.

### G. Count IX (Conversion) Should Not Be Dismissed

#### 1. GHM has properly pled a cause of action for conversion.

"Under Florida law, a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *County of Monroe, Florida v. Priceline.com, Inc.,* 2009 WL 4890664 (S.D. Fla. 2009) (internal citations omitted). As discussed above, GHM has alleged that the Defendants seized (i.e., took possession of)[4] GHM's trade secrets by threat of force during an illegal, midnight raid of the Hotel and ouster of GHM orchestrated by Owner and its accomplices. *See* Complaint at ¶34, 101. Accordingly, GHM has properly pled a cause of action for conversion against Owner.

#### 2. Demand and refusal.

Owner argues that Count IX should be dismissed because GHM failed to allege, and cannot allege, that it has made a demand on Owner that has been refused. This Court previously ruled that demand and refusal are unnecessary where they would be futile and where original possession of the disputed property was unlawful. *County of Monroe, Florida v. Priceline.com,*

---

[4] GHM notes that Owner incorrectly cites this Court's decision in *Small Business Admin. V. Echevarria*, 864 F.Supp. 1254), which discusses the "intent" element of conversion, in support of its argument that "possession, not conduct, constitutes conversion." Intent to deprive, as well as possession by Owner, have

11

*Inc.,* 2009 WL 4890664 at *4. This Court also previously rejected the argument that futility of demand must be explicitly alleged in the complaint. *Id.* at fn. 5. (rejecting the movant's use of *Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490, 500 (Fla 3d DCA 1994), relied upon by Owner in the Motion). Here, GHM has alleged that Owner illegally seized possession of its trade secrets. Moreover, contrary to Owner's assertions, since the illegal raid, GHM has made over a dozen demands for the return of its trade secrets which have fallen on deaf ears. In fact, this issue is the subject of the Plaintiff's Motion to Enjoin Use and Compel Return of GHM's Privileged Documents and Confidential Trade Secret Materials [D.E. 1], which has been fully briefed and is pending before this Court. Accordingly, GHM has shown that demand would have been (and in fact was) futile.

        **3.    Owner does not own GHM's trade secret materials.**

As discussed above, GHM disputes Owner's interpretation of Art. XI §1 of the Management Agreement, which allows for inspection by Setai Owners only of the <u>financial</u> books and records of the Hotel. Owner has <u>no</u> right or interest in GHM's trade secret materials such as confidential employee files (some containing medical records), standard operating procedure manuals, and privileged communications. These highly confidential and <u>privileged</u> materials belonging to GHM should never have been in Owner's possession for inspection and copying, and must be returned immediately.

  **H.  Count XI (Conspiracy) Should Not Be Dismissed**

As discussed above, GHM has adequately pled several underlying torts by the Defendants to bring a claim for conspiracy against Owner and its accomplices. Moreover, Owner's implication that there was no agreement among the Defendants to raid the Hotel and

---

been alleged here.

oust GHM – i.e., that the Defendants coincidentally convened at the Hotel at the exact same time – is an affront to common sense. Accordingly, Count XI should not be dismissed.

### I. Count XII (Willful and Wanton Termination) Should Not Be Dismissed

Under Florida law, willful and wanton misconduct in connection with a breach of contract may constitute an independent tort warranting an award of punitive damages. *See Excel Handbag Co., Inc. v. Edison Bros. Stores, Inc.,* 630 F.2d 379 (5th Cir. Fla. 1980) (holding that there was sufficient evidence from which a jury could conclude that the defendant's conduct in refusing to pay for certain contracted-for goods was willful, wanton, malicious, or in conscious disregard of plaintiff's legal rights as would warrant an award of punitive damages under Florida law); *see also Griffith v. Shamrock Village, Inc.,* 94 So.2d 854, 858 (Fla. 1957) ("The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof."). "The essential elements of willful and wanton misconduct are (1) the actor must have knowledge, actual or constructive, of the likelihood that his conduct will cause injury to other persons or property; and (2) the conduct must indicate a reckless indifference to the rights of others, that is, conduct which may be termed equivalent to an intentional violation of those rights." *Excel Handbag Co., Inc. v. Edison Bros. Stores, Inc.,* 630 F.2d at 384 (internal citations ommitted).

Contrary to Owner's assertions, the issue in Count XII is not whether Owner intentionally breached the Management Agreement. GHM does not dispute that Owner's breach was intentional. Instead, Count XII seeks recovery from Owner for its willful and wanton misconduct in connection with the breach of the Management Agreement. In other words, GHM seeks

recovery from Owner for the tortious <u>manner</u> in which Owner chose to breach the contract.

Notwithstanding the underlying breach of the Management Agreement caused by the termination, Owner could have chosen to terminate GHM with care and in a more safe and orderly fashion. Instead, Owner deliberately ignored its duty of care and chose to oust GHM by force, without any notice, via a midnight raid of the Hotel, and with the assistance of armed security personnel. By terminating GHM in this manner, Owner exhibited reckless and intentional indifference for the rights of GHM, including its goodwill and reputation[5], and for the safety and well-being of GHM's employees and Hotel guests and residents. Owner's willful and wanton actions set a dangerous precedent and should not be condoned. Accordingly, Count XII should not be dismissed.

**II.    OWNER'S MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED[6]**

"[A] pleading that satisfies the notice pleading standards of Rule 8 is…sufficient to withstand a Rule 12(e) motion." *Total Marketing Technologies, Inc. v. Angel Medflight Worldwide Air Ambulance Services, LLC*, 2012 WL 33150 at *5 (quoting *Palma Vista Condo Assoc. of Hillsborough Co., Inc. v. Nationwide Mut. Fire Ins. Co.,* 2010 WL 2293265 (M.D. Fla.

---

[5] For example, Owner hired off-duty, uniformed state troopers to conduct the raid alongside its security personnel, giving the impression to employees, guests, and condominium unit owners that GHM was conducting illegal activity at the Hotel. Owner then blocked GHM's access to its email accounts, so that GHM was unable to respond to correspondence sent by concerned employees, guests, and condominium unit owners, which perpetuated the rumor that GHM was "hauled off to prison." Owner benefitted from this illusion of illegality, because it helped Owner justify its actions to and garner support from Hotel employees, guests, and condominium unit owners.

By taking over the Hotel in this manner, Owner also gave itself the opportunity to inspect and copy GHM's standard operating procedure manuals, forms and other confidential trade secrets, which it is currently using to operate the Hotel. Owner also seized GHM's privileged communications, giving it an unfair advantage in potential litigation.

[6] GHM notes that Owner's counsel failed to confer with GHM's counsel prior to seeking this relief, as required by S.D. Fla. L.R. 7.1(a)(3).

2010)). As discussed above, GHM has clearly set forth sufficient allegations against Owner to support each element of its various claims against Owner. GHM does not know, cannot know, and is not required to know or allege, exactly which representative at Owner authorized the improper acts described in the Complaint and whether such representative was present in Florida during the improper raid of the Hotel.

Moreover, although the Complaint sometimes refers to GHM's parent companies and affiliates in order to add context to the actions committed by the Defendants, GHM has alleged sufficient facts to establish that it is entitled to bring each of the claims listed in the Complaint and that it owns the trade secret materials described in the Complaint.[7]

To the extent Owner seeks a clarification of the factual allegations made by GHM in the Complaint or otherwise believes that any of the allegations made by GHM are false, "the discovery process will afford [Owner] the opportunity to explore further the factual basis of [GHM]'s claim and to narrow the issues." *Id.* Accordingly, Owner's motion for a more definite statement should be denied.

## CONCLUSION

This Court should deny Owner's Motion.

                                                Respectfully submitted,

                                                KOZYAK TROPIN & THROCKMORTON, P.A.
                                                Counsel for Plaintiff
                                                2525 Ponce de Leon, 9th Floor
                                                Coral Gables, Florida 33134
                                                Telephone: (305) 372-1800
                                                Fax: (305) 372-3508

---

[7] Though it reserves the right to do so, GHM has not brought a claim for trademark infringement for the improper use of the GHM marks. Accordingly, ownership of the GHM marks is irrelevant.

By:     /s/ Daniel F. Benavides
Kenneth R. Hartmann
Florida Bar No. 664286
Daniel F. Benavides
Florida Bar No. 81675

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**S that a true and correct copy of the foregoing was efiled with the Clerk of Court and was electronically served by the Court this 11th day of July, 2012 to all parties on the attached service list.

By: /s/Daniel F. Benavides
Kenneth R. Hartmann
Florida Bar No. 664286
Daniel F. Benavides
Florida Bar No. 81675

## SERVICE LIST

*GHM (South Beach LLC) v. Setai Owners, LLC, et al.*
**CASE NO. 12-cv-21932-KMM**
**United States District Court, Southern District of Florida**

Richard H. Critchlow, Esq. (Florida Bar No. 155227)
rcritclow@knpa.com
Elizabeth B. Honkonen, Esq. (Florida Bar No. 149403)
ehonkonen@knpa.com
Kenny Nachwalter, P.A.
201 South Biscayne Blvd.
Suite 1100
Miami, FL 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
*Counsel for Defendant Setai Owners LLC*

Willliam A. Brewer, III
wab@bickerbrewer.com
James S. Renard,
jsr@bickerbrewer.com
Jack G. Ternan
jgt@bickerbrewer.com
Bickel & Brewer
4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015
*Counsel for Defendant Setai Owners LLC*

3515/106/339050.1