

# EXHIBIT A

**INTERNATIONAL COURT OF ARBITRATION®**  |  **INTERNATIONAL CENTRE FOR ADR**  |  LEADING DISPUTE RESOLUTION WORLDWIDE

# ARBITRATION AND ADR RULES



**International Chamber of Commerce**

*The world business organization*



International Chamber of Commerce (ICC)
38, Cours Albert 1er, 75008 Paris, France
**www.iccwbo.org**

© ICC 2001, 2011

All rights reserved. This collective work was initiated by
ICC which holds all rights as defined in the French Code
of Intellectual Property. No part of this publication may
be reproduced or copied in any form or by any means, or
translated, without the prior permission in writing of ICC.

Of the various languages in which these Rules are published,
the English and French versions are the only official texts.

ICC, the ICC logo, CCI, the CCI logo, International Chamber
of Commerce (including Spanish, French, Portuguese
and Chinese translations), World Business Organization,
International Court of Arbitration, ICC International Court of
Arbitration (including Spanish, French, German, Arabic and
Portuguese translations) are all trademarks of ICC, registered
in several countries.

Designed by Further™
furthercreative.co.uk

Printed in France in September 2011 by
Imprimerie de l'Orangerie, Trappes (78).

Dépôt légal septembre 2011

# ARBITRATION AND ADR RULES

This booklet contains two discrete but complementary dispute resolution procedures offered by the International Chamber of Commerce (ICC). Arbitration under the ICC Rules of Arbitration is a formal procedure leading to a binding decision from a neutral arbitral tribunal, susceptible to enforcement pursuant to both domestic arbitration laws and international treaties such as the New York Convention. ADR (amicable dispute resolution) under the ICC ADR Rules aims to facilitate a negotiated settlement with the assistance of an independent neutral. The default procedure under the ADR Rules is mediation, but the provisions also encompass conciliation, neutral evaluation and a variety of combinations of these and other techniques.

Both sets of Rules provide for administered procedures, which require parties to file an application with the International Court of Arbitration ("the Court") (for arbitration) or the International Centre for ADR ("the Centre") (for ADR) as appropriate. The Court and the Centre respectively are the only bodies empowered to administer these Rules, thereby affording parties the benefit of the experience, expertise and professionalism of a leading international dispute resolution provider.

Parties wishing to have recourse to ICC dispute resolution are encouraged to include an appropriate dispute resolution clause in their agreements. For this purpose, standard clauses are proposed, which parties may adapt to their particular needs and circumstances. Examples of recommended clauses can be found at the end of this booklet.

These Rules respond to today's business needs. The 2012 Rules of Arbitration remain faithful to the ethos, and retain the essential features, of ICC arbitration, while adding new provisions to address such matters as disputes involving multiple contracts and parties; updated case management procedures; the appointment of an emergency arbitrator to order urgent measures; and changes to facilitate the handling of disputes arising under investment treaties and free trade agreements.

Both sets of Rules define a structured, institutional framework intended to ensure transparency, efficiency and fairness in the dispute resolution process while allowing parties to exercise their choice over many aspects of procedure. They are published together in this booklet in answer to the growing demand for a holistic approach to dispute resolution techniques.

Drafted by dispute resolution specialists and corporate users from different legal traditions, cultures and professions, these Rules are applicable to disputes between parties in any part of the world, whether or not members of ICC. They are intended for use worldwide in proceedings conducted in any language and subject to any law.

For the convenience of users, the Rules are available in several languages and they may be downloaded from the relevant ICC webpages.

ICC ARBITRATION AND ADR RULES

## ARBITRATION RULES 07

### Introductory Provisions 08

| | | |
|---|---|---|
| Article 1 | International Court of Arbitration | 08 |
| Article 2 | Definitions | 09 |
| Article 3 | Written Notifications or Communications; Time Limits | 09 |

### Commencing the Arbitration 11

| | | |
|---|---|---|
| Article 4 | Request for Arbitration | 11 |
| Article 5 | Answer to the Request; Counterclaims | 12 |
| Article 6 | Effect of the Arbitration Agreement | 14 |

### Multiple Parties, Multiple Contracts and Consolidation 17

| | | |
|---|---|---|
| Article 7 | Joinder of Additional Parties | 17 |
| Article 8 | Claims Between Multiple Parties | 18 |
| Article 9 | Multiple Contracts | 18 |
| Article 10 | Consolidation of Arbitrations | 19 |

### The Arbitral Tribunal 20

| | | |
|---|---|---|
| Article 11 | General Provisions | 20 |
| Article 12 | Constitution of the Arbitral Tribunal | 21 |
| Article 13 | Appointment and Confirmation of the Arbitrators | 23 |
| Article 14 | Challenge of Arbitrators | 24 |
| Article 15 | Replacement of Arbitrators | 25 |

### The Arbitral Proceedings 26

| | | |
|---|---|---|
| Article 16 | Transmission of the File to the Arbitral Tribunal | 26 |
| Article 17 | Proof of Authority | 26 |
| Article 18 | Place of the Arbitration | 26 |
| Article 19 | Rules Governing the Proceedings | 26 |
| Article 20 | Language of the Arbitration | 27 |
| Article 21 | Applicable Rules of Law | 27 |
| Article 22 | Conduct of the Arbitration | 27 |
| Article 23 | Terms of Reference | 28 |
| Article 24 | Case Management Conference and Procedural Timetable | 29 |
| Article 25 | Establishing the Facts of the Case | 30 |
| Article 26 | Hearings | 31 |
| Article 27 | Closing of the Proceedings and Date for Submission of Draft Awards | 32 |
| Article 28 | Conservatory and Interim Measures | 32 |
| Article 29 | Emergency Arbitrator | 33 |

**ICC ARBITRATION AND ADR RULES**
TABLE OF CONTENTS

## Awards                                                      35

Article 30   Time Limit for the Final Award             35
Article 31   Making of the Award                        35
Article 32   Award by Consent                           35
Article 33   Scrutiny of the Award by the Court         36
Article 34   Notification, Deposit and
             Enforceability of the Award                36
Article 35   Correction and Interpretation of
             the Award; Remission of Awards             37

## Costs                                                       38

Article 36   Advance to Cover the Costs of
             the Arbitration                            38
Article 37   Decision as to the Costs of the Arbitration   39

## Miscellaneous                                               41

Article 38   Modified Time Limits                       41
Article 39   Waiver                                     41
Article 40   Limitation of Liability                    41
Article 41   General Rule                               41

## Appendix I – Statutes of the International
## Court of Arbitration                                        42

Article 1    Function                                   42
Article 2    Composition of the Court                   42
Article 3    Appointment                                42
Article 4    Plenary Session of the Court               43
Article 5    Committees                                 43
Article 6    Confidentiality                            44
Article 7    Modification of the Rules of Arbitration   44

## Appendix II – Internal Rules of the International
## Court of Arbitration                                        45

Article 1    Confidential Character of the Work of
             the International Court of Arbitration     45
Article 2    Participation of Members of the
             International Court of Arbitration in
             ICC Arbitration                            46
Article 3    Relations between the Members
             of  the Court and the ICC National
             Committees and Groups                      47
Article 4    Committee of the Court                     47
Article 5    Court Secretariat                          48
Article 6    Scrutiny of Arbitral Awards                48

**Appendix III – Arbitration Costs and Fees**    **49**

Article 1    Advance on Costs                                   49
Article 2    Costs and Fees                                     51
Article 3    ICC as Appointing Authority                        53
Article 4    Scales of Administrative Expenses
             and Arbitrator's Fees                              53

**Appendix IV – Case Management Techniques**    **57**

**Appendix V – Emergency Arbitrator Rules**    **59**

Article 1    Application for Emergency Measures                 59
Article 2    Appointment of the Emergency
             Arbitrator; Transmission of the File               61
Article 3    Challenge of an Emergency Arbitrator               62
Article 4    Place of the Emergency Arbitrator
             Proceedings                                        62
Article 5    Proceedings                                        63
Article 6    Order                                              63
Article 7    Costs of the Emergency Arbitrator
             Proceedings                                        64
Article 8    General Rule                                       65

**ADR RULES**    **67**

Preamble                                                        68

Article 1    Scope of the ICC ADR Rules                         68
Article 2    Commencement of the ADR Proceedings                68
Article 3    Selection of the Neutral                           70
Article 4    Fees and Costs                                     71
Article 5    Conduct of the ADR Procedure                       72
Article 6    Termination of the ADR Proceedings                 72
Article 7    General Provisions                                 73

**Appendix – Schedule of ADR Costs**    **75**

**STANDARD AND SUGGESTED CLAUSES**    **77**

# ARBITRATION RULES

**Rules of Arbitration of the International Chamber of Commerce**

In force as from 1 January 2012



## ARTICLE 1

### International Court of Arbitration

1   The International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") is the independent arbitration body of the ICC. The statutes of the Court are set forth in Appendix I.

2   The Court does not itself resolve disputes. It administers the resolution of disputes by arbitral tribunals, in accordance with the Rules of Arbitration of the ICC (the "Rules"). The Court is the only body authorized to administer arbitrations under the Rules, including the scrutiny and approval of awards rendered in accordance with the Rules. It draws up its own internal rules, which are set forth in Appendix II (the "Internal Rules").

3   The President of the Court (the "President") or, in the President's absence or otherwise at the President's request, one of its Vice-Presidents shall have the power to take urgent decisions on behalf of the Court, provided that any such decision is reported to the Court at its next session.

4   As provided for in the Internal Rules, the Court may delegate to one or more committees composed of its members the power to take certain decisions, provided that any such decision is reported to the Court at its next session.

5   The Court is assisted in its work by the Secretariat of the Court (the "Secretariat") under the direction of its Secretary General (the "Secretary General").

## ARTICLE 2

### Definitions

In the Rules:

(i)   "arbitral tribunal" includes one or more arbitrators;

(ii)  "claimant" includes one or more claimants, "respondent" includes one or more respondents, and "additional party" includes one or more additional parties;

(iii) "party" or "parties" include claimants, respondents or additional parties;

(iv)  "claim" or "claims" include any claim by any party against any other party;

(v)   "award" includes, *inter alia*, an interim, partial or final award.

## ARTICLE 3

### Written Notifications or Communications; Time Limits

1   All pleadings and other written communications submitted by any party, as well as all documents annexed thereto, shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for each arbitrator, and one for the Secretariat. A copy of any notification or communication from the arbitral tribunal to the parties shall be sent to the Secretariat.

2   All notifications or communications from the Secretariat and the arbitral tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, email, or any other means of telecommunication that provides a record of the sending thereof.

3   A notification or communication shall be deemed to have been made on the day it was received by the party itself or by its representative, or would have been received if made in accordance with Article 3(2).

4   Periods of time specified in or fixed under the Rules shall start to run on the day following the date a notification or communication is deemed to have been made in accordance with Article 3(3). When the day next following such date is an official holiday, or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall commence on the first following business day. Official holidays and non-business days are included in the calculation of the period of time. If the last day of the relevant period of time granted is an official holiday or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall expire at the end of the first following business day.

## ARTICLE 4

### Request for Arbitration

1   A party wishing to have recourse to arbitration under the Rules shall submit its Request for Arbitration (the "Request") to the Secretariat at any of the offices specified in the Internal Rules. The Secretariat shall notify the claimant and respondent of the receipt of the Request and the date of such receipt.

2   The date on which the Request is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of the arbitration.

3   The Request shall contain the following information:

a) the name in full, description, address and other contact details of each of the parties;

b) the name in full, address and other contact details of any person(s) representing the claimant in the arbitration;

c) a description of the nature and circumstances of the dispute giving rise to the claims and of the basis upon which the claims are made;

d) a statement of the relief sought, together with the amounts of any quantified claims and, to the extent possible, an estimate of the monetary value of any other claims;

e) any relevant agreements and, in particular, the arbitration agreement(s);

f) where claims are made under more than one arbitration agreement, an indication of the arbitration agreement under which each claim is made;

g) all relevant particulars and any observations or proposals concerning the number of arbitrators and their choice in accordance with the provisions of Articles 12 and 13, and any nomination of an arbitrator required thereby; and

h) all relevant particulars and any observations or proposals as to the place of the arbitration, the applicable rules of law and the language of the arbitration.

The claimant may submit such other documents or information with the Request as it considers appropriate or as may contribute to the efficient resolution of the dispute.

4   Together with the Request, the claimant shall:

   a) submit the number of copies thereof required by Article 3(1); and

   b) make payment of the filing fee required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted.

In the event that the claimant fails to comply with either of these requirements, the Secretariat may fix a time limit within which the claimant must comply, failing which the file shall be closed without prejudice to the claimant's right to submit the same claims at a later date in another Request.

5   The Secretariat shall transmit a copy of the Request and the documents annexed thereto to the respondent for its Answer to the Request once the Secretariat has sufficient copies of the Request and the required filing fee.

## ARTICLE 5

### Answer to the Request; Counterclaims

1   Within 30 days from the receipt of the Request from the Secretariat, the respondent shall submit an Answer (the "Answer") which shall contain the following information:

   a) its name in full, description, address and other contact details;

   b) the name in full, address and other contact details of any person(s) representing the respondent in the arbitration;

   c) its comments as to the nature and circumstances of the dispute giving rise to the claims and the basis upon which the claims are made;

   d) its response to the relief sought;

    e) any observations or proposals concerning the number of arbitrators and their choice in light of the claimant's proposals and in accordance with the provisions of Articles 12 and 13, and any nomination of an arbitrator required thereby; and

    f) any observations or proposals as to the place of the arbitration, the applicable rules of law and the language of the arbitration.

The respondent may submit such other documents or information with the Answer as it considers appropriate or as may contribute to the efficient resolution of the dispute.

2   The Secretariat may grant the respondent an extension of the time for submitting the Answer, provided the application for such an extension contains the respondent's observations or proposals concerning the number of arbitrators and their choice and, where required by Articles 12 and 13, the nomination of an arbitrator. If the respondent fails to do so, the Court shall proceed in accordance with the Rules.

3   The Answer shall be submitted to the Secretariat in the number of copies specified by Article 3(1).

4   The Secretariat shall communicate the Answer and the documents annexed thereto to all other parties.

5   Any counterclaims made by the respondent shall be submitted with the Answer and shall provide:

    a) a description of the nature and circumstances of the dispute giving rise to the counterclaims and of the basis upon which the counterclaims are made;

    b) a statement of the relief sought together with the amounts of any quantified counterclaims and, to the extent possible, an estimate of the monetary value of any other counterclaims;

    c) any relevant agreements and, in particular, the arbitration agreement(s); and

    d) where counterclaims are made under more than one arbitration agreement, an indication of the arbitration agreement under which each counterclaim is made.

The respondent may submit such other documents or information with the counterclaims as it considers appropriate or as may contribute to the efficient resolution of the dispute.

6   The claimant shall submit a reply to any counterclaim within 30 days from the date of receipt of the counterclaims communicated by the Secretariat. Prior to the transmission of the file to the arbitral tribunal, the Secretariat may grant the claimant an extension of time for submitting the reply.

## ARTICLE 6

### Effect of the Arbitration Agreement

1   Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted *ipso facto* to the Rules in effect on the date of commencement of the arbitration, unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.

2   By agreeing to arbitration under the Rules, the parties have accepted that the arbitration shall be administered by the Court.

3   If any party against which a claim has been made does not submit an answer, or raises one or more pleas concerning the existence, validity or scope of the arbitration agreement or concerning whether all of the claims made in the arbitration may be determined together in a single arbitration, the arbitration shall proceed and any question of jurisdiction or of whether the claims may be determined together in that arbitration shall be decided directly by the arbitral tribunal, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).

4   In all cases referred to the Court under Article 6(3), the Court shall decide whether and to what extent the arbitration shall proceed. The arbitration shall proceed if and to the extent that the Court is *prima facie* satisfied that an arbitration agreement under the Rules may exist. In particular:

   (i) where there are more than two parties to the arbitration, the arbitration shall proceed between those of the parties, including any additional parties joined pursuant to Article 7, with respect to which the Court is *prima facie* satisfied that an arbitration agreement under the Rules that binds them all may exist; and

   (ii) where claims pursuant to Article 9 are made under more than one arbitration agreement, the arbitration shall proceed as to those claims with respect to which the Court is *prima facie* satisfied (a) that the arbitration agreements under which those claims are made may be compatible, and (b) that all parties to the arbitration may have agreed that those claims can be determined together in a single arbitration.

   The Court's decision pursuant to Article 6(4) is without prejudice to the admissibility or merits of any party's plea or pleas.

5   In all matters decided by the Court under Article 6(4), any decision as to the jurisdiction of the arbitral tribunal, except as to parties or claims with respect to which the Court decides that the arbitration cannot proceed, shall then be taken by the arbitral tribunal itself.

6   Where the parties are notified of the Court's decision pursuant to Article 6(4) that the arbitration cannot proceed in respect of some or all of them, any party retains the right to ask any court having jurisdiction whether or not, and in respect of which of them, there is a binding arbitration agreement.

7   Where the Court has decided pursuant to Article 6(4) that the arbitration cannot proceed in respect of any of the claims, such decision shall not prevent a party from reintroducing the same claim at a later date in other proceedings.

8   If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.

9   Unless otherwise agreed, the arbitral tribunal shall not cease to have jurisdiction by reason of any allegation that the contract is non-existent or null and void, provided that the arbitral tribunal upholds the validity of the arbitration agreement. The arbitral tribunal shall continue to have jurisdiction to determine the parties' respective rights and to decide their claims and pleas even though the contract itself may be non-existent or null and void.

ICC ARBITRATION RULES
MULTIPLE PARTIES, MULTIPLE CONTRACTS
AND CONSOLIDATION

### ARTICLE 7

#### Joinder of Additional Parties

1   A party wishing to join an additional party to the arbitration shall submit its request for arbitration against the additional party (the "Request for Joinder") to the Secretariat. The date on which the Request for Joinder is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of arbitration against the additional party. Any such joinder shall be subject to the provisions of Articles 6(3)–6(7) and 9. No additional party may be joined after the confirmation or appointment of any arbitrator, unless all parties, including the additional party, otherwise agree. The Secretariat may fix a time limit for the submission of a Request for Joinder.

2   The Request for Joinder shall contain the following information:

   a) the case reference of the existing arbitration;

   b) the name in full, description, address and other contact details of each of the parties, including the additional party; and

   c) the information specified in Article 4(3) subparagraphs c), d), e) and f).

   The party filing the Request for Joinder may submit therewith such other documents or information as it considers appropriate or as may contribute to the efficient resolution of the dispute.

3   The provisions of Articles 4(4) and 4(5) shall apply, *mutatis mutandis*, to the Request for Joinder.

4   The additional party shall submit an Answer in accordance, *mutatis mutandis*, with the provisions of Articles 5(1)–5(4). The additional party may make claims against any other party in accordance with the provisions of Article 8.

## ARTICLE 8

### Claims Between Multiple Parties

1   In an arbitration with multiple parties, claims may be made by any party against any other party, subject to the provisions of Articles 6(3)–6(7) and 9 and provided that no new claims may be made after the Terms of Reference are signed or approved by the Court without the authorization of the arbitral tribunal pursuant to Article 23(4).

2   Any party making a claim pursuant to Article 8(1) shall provide the information specified in Article 4(3) subparagraphs c), d), e) and f).

3   Before the Secretariat transmits the file to the arbitral tribunal in accordance with Article 16, the following provisions shall apply, *mutatis mutandis*, to any claim made: Article 4(4) subparagraph a); Article 4(5); Article 5(1) except for subparagraphs a), b), e) and f); Article 5(2); Article 5(3) and Article 5(4). Thereafter, the arbitral tribunal shall determine the procedure for making a claim.

## ARTICLE 9

### Multiple Contracts

Subject to the provisions of Articles 6(3)–6(7) and 23(4), claims arising out of or in connection with more than one contract may be made in a single arbitration, irrespective of whether such claims are made under one or more than one arbitration agreement under the Rules.

## ARTICLE 10

### Consolidation of Arbitrations

The Court may, at the request of a party, consolidate two or more arbitrations pending under the Rules into a single arbitration, where:

a) the parties have agreed to consolidation; or

b) all of the claims in the arbitrations are made under the same arbitration agreement; or

c) where the claims in the arbitrations are made under more than one arbitration agreement, the arbitrations are between the same parties, the disputes in the arbitrations arise in connection with the same legal relationship, and the Court finds the arbitration agreements to be compatible.

In deciding whether to consolidate, the Court may take into account any circumstances it considers to be relevant, including whether one or more arbitrators have been confirmed or appointed in more than one of the arbitrations and, if so, whether the same or different persons have been confirmed or appointed.

When arbitrations are consolidated, they shall be consolidated into the arbitration that commenced first, unless otherwise agreed by all parties.

19

## ARTICLE 11

### General Provisions

1   Every arbitrator must be and remain impartial and independent of the parties involved in the arbitration.

2   Before appointment or confirmation, a prospective arbitrator shall sign a statement of acceptance, availability, impartiality and independence. The prospective arbitrator shall disclose in writing to the Secretariat any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties, as well as any circumstances that could give rise to reasonable doubts as to the arbitrator's impartiality. The Secretariat shall provide such information to the parties in writing and fix a time limit for any comments from them.

3   An arbitrator shall immediately disclose in writing to the Secretariat and to the parties any facts or circumstances of a similar nature to those referred to in Article 11(2) concerning the arbitrator's impartiality or independence which may arise during the arbitration.

4   The decisions of the Court as to the appointment, confirmation, challenge or replacement of an arbitrator shall be final, and the reasons for such decisions shall not be communicated.

5   By accepting to serve, arbitrators undertake to carry out their responsibilities in accordance with the Rules.

6   Insofar as the parties have not provided otherwise, the arbitral tribunal shall be constituted in accordance with the provisions of Articles 12 and 13.

## ARTICLE 12

### Constitution of the Arbitral Tribunal
### Number of Arbitrators

1   The disputes shall be decided by a sole arbitrator or by three arbitrators.

2   Where the parties have not agreed upon the number of arbitrators, the Court shall appoint a sole arbitrator, save where it appears to the Court that the dispute is such as to warrant the appointment of three arbitrators. In such case, the claimant shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the decision of the Court, and the respondent shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the nomination made by the claimant. If a party fails to nominate an arbitrator, the appointment shall be made by the Court.

### Sole Arbitrator

3   Where the parties have agreed that the dispute shall be resolved by a sole arbitrator, they may, by agreement, nominate the sole arbitrator for confirmation. If the parties fail to nominate a sole arbitrator within 30 days from the date when the claimant's Request for Arbitration has been received by the other party, or within such additional time as may be allowed by the Secretariat, the sole arbitrator shall be appointed by the Court.

### Three Arbitrators

4   Where the parties have agreed that the dispute shall be resolved by three arbitrators, each party shall nominate in the Request and the Answer, respectively, one arbitrator for confirmation. If a party fails to nominate an arbitrator, the appointment shall be made by the Court.

5   Where the dispute is to be referred to three arbitrators, the third arbitrator, who will act as president of the arbitral tribunal, shall be appointed by the Court, unless the parties have agreed upon another procedure for such appointment, in which case the nomination will be subject to confirmation pursuant to Article 13. Should such procedure not result in a nomination within 30 days from the confirmation or appointment of the co-arbitrators or any other time limit agreed by the parties or fixed by the Court, the third arbitrator shall be appointed by the Court.

6   Where there are multiple claimants or multiple respondents, and where the dispute is to be referred to three arbitrators, the multiple claimants, jointly, and the multiple respondents, jointly, shall nominate an arbitrator for confirmation pursuant to Article 13.

7   Where an additional party has been joined, and where the dispute is to be referred to three arbitrators, the additional party may, jointly with the claimant(s) or with the respondent(s), nominate an arbitrator for confirmation pursuant to Article 13.

8   In the absence of a joint nomination pursuant to Articles 12(6) or 12(7) and where all parties are unable to agree to a method for the constitution of the arbitral tribunal, the Court may appoint each member of the arbitral tribunal and shall designate one of them to act as president. In such case, the Court shall be at liberty to choose any person it regards as suitable to act as arbitrator, applying Article 13 when it considers this appropriate.

## ARTICLE 13

### Appointment and Confirmation of the Arbitrators

1   In confirming or appointing arbitrators, the Court shall consider the prospective arbitrator's nationality, residence and other relationships with the countries of which the parties or the other arbitrators are nationals and the prospective arbitrator's availability and ability to conduct the arbitration in accordance with the Rules. The same shall apply where the Secretary General confirms arbitrators pursuant to Article 13(2).

2   The Secretary General may confirm as co-arbitrators, sole arbitrators and presidents of arbitral tribunals persons nominated by the parties or pursuant to their particular agreements, provided that the statement they have submitted contains no qualification regarding impartiality or independence or that a qualified statement regarding impartiality or independence has not given rise to objections. Such confirmation shall be reported to the Court at its next session. If the Secretary General considers that a co-arbitrator, sole arbitrator or president of an arbitral tribunal should not be confirmed, the matter shall be submitted to the Court.

3   Where the Court is to appoint an arbitrator, it shall make the appointment upon proposal of a National Committee or Group of the ICC that it considers to be appropriate. If the Court does not accept the proposal made, or if the National Committee or Group fails to make the proposal requested within the time limit fixed by the Court, the Court may repeat its request, request a proposal from another National Committee or Group that it considers to be appropriate, or appoint directly any person whom it regards as suitable.

4   The Court may also appoint directly to act as arbitrator any person whom it regards as suitable where:

   a)   one or more of the parties is a state or claims to be a state entity; or

b) the Court considers that it would be appropriate to appoint an arbitrator from a country or territory where there is no National Committee or Group; or

c) the President certifies to the Court that circumstances exist which, in the President's opinion, make a direct appointment necessary and appropriate.

5   The sole arbitrator or the president of the arbitral tribunal shall be of a nationality other than those of the parties. However, in suitable circumstances and provided that none of the parties objects within the time limit fixed by the Court, the sole arbitrator or the president of the arbitral tribunal may be chosen from a country of which any of the parties is a national.

## ARTICLE 14

### Challenge of Arbitrators

1   A challenge of an arbitrator, whether for an alleged lack of impartiality or independence, or otherwise, shall be made by the submission to the Secretariat of a written statement specifying the facts and circumstances on which the challenge is based.

2   For a challenge to be admissible, it must be submitted by a party either within 30 days from receipt by that party of the notification of the appointment or confirmation of the arbitrator, or within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

3   The Court shall decide on the admissibility and, at the same time, if necessary, on the merits of a challenge after the Secretariat has afforded an opportunity for the arbitrator concerned, the other party or parties and any other members of the arbitral tribunal to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

## ARTICLE 15

### Replacement of Arbitrators

1  An arbitrator shall be replaced upon death, upon acceptance by the Court of the arbitrator's resignation, upon acceptance by the Court of a challenge, or upon acceptance by the Court of a request of all the parties.

2  An arbitrator shall also be replaced on the Court's own initiative when it decides that the arbitrator is prevented *de jure* or *de facto* from fulfilling the arbitrator's functions, or that the arbitrator is not fulfilling those functions in accordance with the Rules or within the prescribed time limits.

3  When, on the basis of information that has come to its attention, the Court considers applying Article 15(2), it shall decide on the matter after the arbitrator concerned, the parties and any other members of the arbitral tribunal have had an opportunity to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

4  When an arbitrator is to be replaced, the Court has discretion to decide whether or not to follow the original nominating process. Once reconstituted, and after having invited the parties to comment, the arbitral tribunal shall determine if and to what extent prior proceedings shall be repeated before the reconstituted arbitral tribunal.

5  Subsequent to the closing of the proceedings, instead of replacing an arbitrator who has died or been removed by the Court pursuant to Articles 15(1) or 15(2), the Court may decide, when it considers it appropriate, that the remaining arbitrators shall continue the arbitration. In making such determination, the Court shall take into account the views of the remaining arbitrators and of the parties and such other matters that it considers appropriate in the circumstances.

### ARTICLE 16

#### Transmission of the File to the Arbitral Tribunal

The Secretariat shall transmit the file to the arbitral tribunal as soon as it has been constituted, provided the advance on costs requested by the Secretariat at this stage has been paid.

### ARTICLE 17

#### Proof of Authority

At any time after the commencement of the arbitration, the arbitral tribunal or the Secretariat may require proof of the authority of any party representatives.

### ARTICLE 18

#### Place of the Arbitration

1   The place of the arbitration shall be fixed by the Court, unless agreed upon by the parties.

2   The arbitral tribunal may, after consultation with the parties, conduct hearings and meetings at any location it considers appropriate, unless otherwise agreed by the parties.

3   The arbitral tribunal may deliberate at any location it considers appropriate.

### ARTICLE 19

#### Rules Governing the Proceedings

The proceedings before the arbitral tribunal shall be governed by the Rules and, where the Rules are silent, by any rules which the parties or, failing them, the arbitral tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

## ARTICLE 20

### Language of the Arbitration

In the absence of an agreement by the parties, the arbitral tribunal shall determine the language or languages of the arbitration, due regard being given to all relevant circumstances, including the language of the contract.

## ARTICLE 21

### Applicable Rules of Law

1   The parties shall be free to agree upon the rules of law to be applied by the arbitral tribunal to the merits of the dispute. In the absence of any such agreement, the arbitral tribunal shall apply the rules of law which it determines to be appropriate.

2   The arbitral tribunal shall take account of the provisions of the contract, if any, between the parties and of any relevant trade usages.

3   The arbitral tribunal shall assume the powers of an *amiable compositeur* or decide *ex aequo et bono* only if the parties have agreed to give it such powers.

## ARTICLE 22

### Conduct of the Arbitration

1   The arbitral tribunal and the parties shall make every effort to conduct the arbitration in an expeditious and cost-effective manner, having regard to the complexity and value of the dispute.

2   In order to ensure effective case management, the arbitral tribunal, after consulting the parties, may adopt such procedural measures as it considers appropriate, provided that they are not contrary to any agreement of the parties.

3   Upon the request of any party, the arbitral tribunal may make orders concerning the confidentiality of the arbitration proceedings or of any other matters in connection with the arbitration and may take measures for protecting trade secrets and confidential information.

4   In all cases, the arbitral tribunal shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.

5   The parties undertake to comply with any order made by the arbitral tribunal.

## ARTICLE 23

### Terms of Reference

1   As soon as it has received the file from the Secretariat, the arbitral tribunal shall draw up, on the basis of documents or in the presence of the parties and in the light of their most recent submissions, a document defining its Terms of Reference. This document shall include the following particulars:

   a) the names in full, description, address and other contact details of each of the parties and of any person(s) representing a party in the arbitration;

   b) the addresses to which notifications and communications arising in the course of the arbitration may be made;

   c) a summary of the parties' respective claims and of the relief sought by each party, together with the amounts of any quantified claims and, to the extent possible, an estimate of the monetary value of any other claims;

   d) unless the arbitral tribunal considers it inappropriate, a list of issues to be determined;

   e) the names in full, address and other contact details of each of the arbitrators;

   f) the place of the arbitration; and

g) particulars of the applicable procedural rules and, if such is the case, reference to the power conferred upon the arbitral tribunal to act as *amiable compositeur* or to decide *ex aequo et bono.*

2    The Terms of Reference shall be signed by the parties and the arbitral tribunal. Within two months of the date on which the file has been transmitted to it, the arbitral tribunal shall transmit to the Court the Terms of Reference signed by it and by the parties. The Court may extend this time limit pursuant to a reasoned request from the arbitral tribunal or on its own initiative if it decides it is necessary to do so.

3    If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall be submitted to the Court for approval. When the Terms of Reference have been signed in accordance with Article 23(2) or approved by the Court, the arbitration shall proceed.

4    After the Terms of Reference have been signed or approved by the Court, no party shall make new claims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the arbitral tribunal, which shall consider the nature of such new claims, the stage of the arbitration and other relevant circumstances.

## ARTICLE 24

### Case Management Conference and Procedural Timetable

1    When drawing up the Terms of Reference or as soon as possible thereafter, the arbitral tribunal shall convene a case management conference to consult the parties on procedural measures that may be adopted pursuant to Article 22(2). Such measures may include one or more of the case management techniques described in Appendix IV.

2   During or following such conference, the arbitral tribunal shall establish the procedural timetable that it intends to follow for the conduct of the arbitration. The procedural timetable and any modifications thereto shall be communicated to the Court and the parties.

3   To ensure continued effective case management, the arbitral tribunal, after consulting the parties by means of a further case management conference or otherwise, may adopt further procedural measures or modify the procedural timetable.

4   Case management conferences may be conducted through a meeting in person, by video conference, telephone or similar means of communication. In the absence of an agreement of the parties, the arbitral tribunal shall determine the means by which the conference will be conducted. The arbitral tribunal may request the parties to submit case management proposals in advance of a case management conference and may request the attendance at any case management conference of the parties in person or through an internal representative.

## ARTICLE 25

### Establishing the Facts of the Case

1   The arbitral tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means.

2   After studying the written submissions of the parties and all documents relied upon, the arbitral tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them.

3   The arbitral tribunal may decide to hear witnesses, experts appointed by the parties or any other person, in the presence of the parties, or in their absence provided they have been duly summoned.

4   The arbitral tribunal, after having consulted the parties, may appoint one or more experts, define their terms of reference and receive their reports. At the request of a party, the parties shall be given the opportunity to question at a hearing any such expert.

5   At any time during the proceedings, the arbitral tribunal may summon any party to provide additional evidence.

6   The arbitral tribunal may decide the case solely on the documents submitted by the parties unless any of the parties requests a hearing.

## ARTICLE 26

### Hearings

1   When a hearing is to be held, the arbitral tribunal, giving reasonable notice, shall summon the parties to appear before it on the day and at the place fixed by it.

2   If any of the parties, although duly summoned, fails to appear without valid excuse, the arbitral tribunal shall have the power to proceed with the hearing.

3   The arbitral tribunal shall be in full charge of the hearings, at which all the parties shall be entitled to be present. Save with the approval of the arbitral tribunal and the parties, persons not involved in the proceedings shall not be admitted.

4   The parties may appear in person or through duly authorized representatives. In addition, they may be assisted by advisers.

## ARTICLE 27

### Closing of the Proceedings and Date for Submission of Draft Awards

As soon as possible after the last hearing concerning matters to be decided in an award or the filing of the last authorized submissions concerning such matters, whichever is later, the arbitral tribunal shall:

a) declare the proceedings closed with respect to the matters to be decided in the award; and

b) inform the Secretariat and the parties of the date by which it expects to submit its draft award to the Court for approval pursuant to Article 33.

After the proceedings are closed, no further submission or argument may be made, or evidence produced, with respect to the matters to be decided in the award, unless requested or authorized by the arbitral tribunal.

## ARTICLE 28

### Conservatory and Interim Measures

1  Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the arbitral tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. The arbitral tribunal may make the granting of any such measure subject to appropriate security being furnished by the requesting party. Any such measure shall take the form of an order, giving reasons, or of an award, as the arbitral tribunal considers appropriate.

2  Before the file is transmitted to the arbitral tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an arbitral tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the arbitral tribunal.

Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat. The Secretariat shall inform the arbitral tribunal thereof.

## ARTICLE 29

### Emergency Arbitrator

1   A party that needs urgent interim or conservatory measures that cannot await the constitution of an arbitral tribunal ("Emergency Measures") may make an application for such measures pursuant to the Emergency Arbitrator Rules in Appendix V. Any such application shall be accepted only if it is received by the Secretariat prior to the transmission of the file to the arbitral tribunal pursuant to Article 16 and irrespective of whether the party making the application has already submitted its Request for Arbitration.

2   The emergency arbitrator's decision shall take the form of an order. The parties undertake to comply with any order made by the emergency arbitrator.

3   The emergency arbitrator's order shall not bind the arbitral tribunal with respect to any question, issue or dispute determined in the order. The arbitral tribunal may modify, terminate or annul the order or any modification thereto made by the emergency arbitrator.

4   The arbitral tribunal shall decide upon any party's requests or claims related to the emergency arbitrator proceedings, including the reallocation of the costs of such proceedings and any claims arising out of or in connection with the compliance or non-compliance with the order.

5   Articles 29(1)–29(4) and the Emergency Arbitrator Rules set forth in Appendix V (collectively the "Emergency Arbitrator Provisions") shall apply only to parties that are either signatories of the arbitration agreement under the Rules that is relied upon for the application or successors to such signatories.

6   The Emergency Arbitrator Provisions shall not apply if:

   a) the arbitration agreement under the Rules was concluded before the date on which the Rules came into force;

   b) the parties have agreed to opt out of the Emergency Arbitrator Provisions; or

   c) the parties have agreed to another pre-arbitral procedure that provides for the granting of conservatory, interim or similar measures.

7   The Emergency Arbitrator Provisions are not intended to prevent any party from seeking urgent interim or conservatory measures from a competent judicial authority at any time prior to making an application for such measures, and in appropriate circumstances even thereafter, pursuant to the Rules. Any application for such measures from a competent judicial authority shall not be deemed to be an infringement or a waiver of the arbitration agreement. Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat.

## ARTICLE 30

### Time Limit for the Final Award

1   The time limit within which the arbitral tribunal must render its final award is six months. Such time limit shall start to run from the date of the last signature by the arbitral tribunal or by the parties of the Terms of Reference or, in the case of application of Article 23(3), the date of the notification to the arbitral tribunal by the Secretariat of the approval of the Terms of Reference by the Court. The Court may fix a different time limit based upon the procedural timetable established pursuant to Article 24(2).

2   The Court may extend the time limit pursuant to a reasoned request from the arbitral tribunal or on its own initiative if it decides it is necessary to do so.

## ARTICLE 31

### Making of the Award

1   When the arbitral tribunal is composed of more than one arbitrator, an award is made by a majority decision. If there is no majority, the award shall be made by the president of the arbitral tribunal alone.

2   The award shall state the reasons upon which it is based.

3   The award shall be deemed to be made at the place of the arbitration and on the date stated therein.

## ARTICLE 32

### Award by Consent

If the parties reach a settlement after the file has been transmitted to the arbitral tribunal in accordance with Article 16, the settlement shall be recorded in the form of an award made by consent of the parties, if so requested by the parties and if the arbitral tribunal agrees to do so.

## ARTICLE 33

### Scrutiny of the Award by the Court

Before signing any award, the arbitral tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the award and, without affecting the arbitral tribunal's liberty of decision, may also draw its attention to points of substance. No award shall be rendered by the arbitral tribunal until it has been approved by the Court as to its form.

## ARTICLE 34

### Notification, Deposit and Enforceability of the Award

1   Once an award has been made, the Secretariat shall notify to the parties the text signed by the arbitral tribunal, provided always that the costs of the arbitration have been fully paid to the ICC by the parties or by one of them.

2   Additional copies certified true by the Secretary General shall be made available on request and at any time to the parties, but to no one else.

3   By virtue of the notification made in accordance with Article 34(1), the parties waive any other form of notification or deposit on the part of the arbitral tribunal.

4   An original of each award made in accordance with the Rules shall be deposited with the Secretariat.

5   The arbitral tribunal and the Secretariat shall assist the parties in complying with whatever further formalities may be necessary.

6   Every award shall be binding on the parties. By submitting the dispute to arbitration under the Rules, the parties undertake to carry out any award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.

## ARTICLE 35

### Correction and Interpretation of the Award; Remission of Awards

1   On its own initiative, the arbitral tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an award, provided such correction is submitted for approval to the Court within 30 days of the date of such award.

2   Any application of a party for the correction of an error of the kind referred to in Article 35(1), or for the interpretation of an award, must be made to the Secretariat within 30 days of the receipt of the award by such party, in a number of copies as stated in Article 3(1). After transmittal of the application to the arbitral tribunal, the latter shall grant the other party a short time limit, normally not exceeding 30 days, from the receipt of the application by that party, to submit any comments thereon. The arbitral tribunal shall submit its decision on the application in draft form to the Court not later than 30 days following the expiration of the time limit for the receipt of any comments from the other party or within such other period as the Court may decide.

3   A decision to correct or to interpret the award shall take the form of an addendum and shall constitute part of the award. The provisions of Articles 31, 33 and 34 shall apply *mutatis mutandis*.

4   Where a court remits an award to the arbitral tribunal, the provisions of Articles 31, 33, 34 and this Article 35 shall apply *mutatis mutandis* to any addendum or award made pursuant to the terms of such remission. The Court may take any steps as may be necessary to enable the arbitral tribunal to comply with the terms of such remission and may fix an advance to cover any additional fees and expenses of the arbitral tribunal and any additional ICC administrative expenses.

## ARTICLE 36

### Advance to Cover the Costs of the Arbitration

1   After receipt of the Request, the Secretary General may request the claimant to pay a provisional advance in an amount intended to cover the costs of the arbitration until the Terms of Reference have been drawn up. Any provisional advance paid will be considered as a partial payment by the claimant of any advance on costs fixed by the Court pursuant to this Article 36.

2   As soon as practicable, the Court shall fix the advance on costs in an amount likely to cover the fees and expenses of the arbitrators and the ICC administrative expenses for the claims which have been referred to it by the parties, unless any claims are made under Article 7 or 8 in which case Article 36(4) shall apply. The advance on costs fixed by the Court pursuant to this Article 36(2) shall be payable in equal shares by the claimant and the respondent.

3   Where counterclaims are submitted by the respondent under Article 5 or otherwise, the Court may fix separate advances on costs for the claims and the counterclaims. When the Court has fixed separate advances on costs, each of the parties shall pay the advance on costs corresponding to its claims.

4   Where claims are made under Article 7 or 8, the Court shall fix one or more advances on costs that shall be payable by the parties as decided by the Court. Where the Court has previously fixed any advance on costs pursuant to this Article 36, any such advance shall be replaced by the advance(s) fixed pursuant to this Article 36(4), and the amount of any advance previously paid by any party will be considered as a partial payment by such party of its share of the advance(s) on costs as fixed by the Court pursuant to this Article 36(4).

5   The amount of any advance on costs fixed by the Court pursuant to this Article 36 may be subject to readjustment at any time during the arbitration. In all cases, any party shall be free to pay any other party's share of any advance on costs should such other party fail to pay its share.

6   When a request for an advance on costs has not been complied with, and after consultation with the arbitral tribunal, the Secretary General may direct the arbitral tribunal to suspend its work and set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims shall be considered as withdrawn. Should the party in question wish to object to this measure, it must make a request within the aforementioned period for the matter to be decided by the Court. Such party shall not be prevented, on the ground of such withdrawal, from reintroducing the same claims at a later date in another proceeding.

7   If one of the parties claims a right to a set-off with regard to any claim, such set-off shall be taken into account in determining the advance to cover the costs of the arbitration in the same way as a separate claim insofar as it may require the arbitral tribunal to consider additional matters.

## ARTICLE 37

### Decision as to the Costs of the Arbitration

1   The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitration, as well as the fees and expenses of any experts appointed by the arbitral tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.

2   The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case.

**ICC ARBITRATION RULES**
COSTS

3   At any time during the arbitral proceedings, the arbitral tribunal may make decisions on costs, other than those to be fixed by the Court, and order payment.

4   The final award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

5   In making decisions as to costs, the arbitral tribunal may take into account such circumstances as it considers relevant, including the extent to which each party has conducted the arbitration in an expeditious and cost-effective manner.

6   In the event of the withdrawal of all claims or the termination of the arbitration before the rendering of a final award, the Court shall fix the fees and expenses of the arbitrators and the ICC administrative expenses. If the parties have not agreed upon the allocation of the costs of the arbitration or other relevant issues with respect to costs, such matters shall be decided by the arbitral tribunal. If the arbitral tribunal has not been constituted at the time of such withdrawal or termination, any party may request the Court to proceed with the constitution of the arbitral tribunal in accordance with the Rules so that the arbitral tribunal may make decisions as to costs.

## ARTICLE 38

### Modified Time Limits

1   The parties may agree to shorten the various time limits set out in the Rules. Any such agreement entered into subsequent to the constitution of an arbitral tribunal shall become effective only upon the approval of the arbitral tribunal.

2   The Court, on its own initiative, may extend any time limit which has been modified pursuant to Article 38(1) if it decides that it is necessary to do so in order that the arbitral tribunal and the Court may fulfil their responsibilities in accordance with the Rules.

## ARTICLE 39

### Waiver

A party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of the Rules, or of any other rules applicable to the proceedings, any direction given by the arbitral tribunal, or any requirement under the arbitration agreement relating to the constitution of the arbitral tribunal or the conduct of the proceedings, shall be deemed to have waived its right to object.

## ARTICLE 40

### Limitation of Liability

The arbitrators, any person appointed by the arbitral tribunal, the emergency arbitrator, the Court and its members, the ICC and its employees, and the ICC National Committees and Groups and their employees and representatives shall not be liable to any person for any act or omission in connection with the arbitration, except to the extent such limitation of liability is prohibited by applicable law.

## ARTICLE 41

### General Rule

In all matters not expressly provided for in the Rules, the Court and the arbitral tribunal shall act in the spirit of the Rules and shall make every effort to make sure that the award is enforceable at law.

ICC ARBITRATION RULES
APPENDIX I – STATUTES OF THE INTERNATIONAL
COURT OF ARBITRATION

## ARTICLE 1

### Function

1   The function of the International Court of Arbitration of the International Chamber of Commerce (the "Court") is to ensure the application of the Rules of Arbitration of the International Chamber of Commerce, and it has all the necessary powers for that purpose.

2   As an autonomous body, it carries out these functions in complete independence from the ICC and its organs.

3   Its members are independent from the ICC National Committees and Groups.

## ARTICLE 2

### Composition of the Court

The Court shall consist of a President,[1] Vice-Presidents,[2] and members and alternate members (collectively designated as members). In its work it is assisted by its Secretariat (Secretariat of the Court).

## ARTICLE 3

### Appointment

1   The President is elected by the ICC World Council upon the recommendation of the Executive Board of the ICC.

2   The ICC World Council appoints the Vice-Presidents of the Court from among the members of the Court or otherwise.

1   Referred to as "Chairman of the International Court of Arbitration" in the Constitution of the International Chamber of Commerce.

2   Referred to as "Vice-Chairmen of the International Court of Arbitration" in the Constitution of the International Chamber of Commerce.

3  Its members are appointed by the ICC World Council on the proposal of National Committees or Groups, one member for each National Committee or Group.

4  On the proposal of the President of the Court, the World Council may appoint alternate members.

5  The term of office of all members, including, for the purposes of this paragraph, the President and Vice-Presidents, is three years. If a member is no longer in a position to exercise the member's functions, a successor is appointed by the World Council for the remainder of the term. Upon the recommendation of the Executive Board, the duration of the term of office of any member may be extended beyond three years if the World Council so decides.

## ARTICLE 4

### Plenary Session of the Court

The Plenary Sessions of the Court are presided over by the President or, in the President's absence, by one of the Vice-Presidents designated by the President. The deliberations shall be valid when at least six members are present. Decisions are taken by a majority vote, the President or Vice-President, as the case may be, having a casting vote in the event of a tie.

## ARTICLE 5

### Committees

The Court may set up one or more Committees and establish the functions and organization of such Committees.

ICC ARBITRATION RULES

## ARTICLE 6

### Confidentiality

The work of the Court is of a confidential nature which must be respected by everyone who participates in that work in whatever capacity. The Court lays down the rules regarding the persons who can attend the meetings of the Court and its Committees and who are entitled to have access to materials related to the work of the Court and its Secretariat.

## ARTICLE 7

### Modification of the Rules of Arbitration

Any proposal of the Court for a modification of the Rules is laid before the Commission on Arbitration before submission to the Executive Board of the ICC for approval, provided, however, that the Court, in order to take account of developments in information technology, may propose to modify or supplement the provisions of Article 3 of the Rules or any related provisions in the Rules without laying any such proposal before the Commission.

ICC ARBITRATION RULES
APPENDIX II – INTERNAL RULES OF THE
INTERNATIONAL COURT OF ARBITRATION

## ARTICLE 1

### Confidential Character of the Work of the International Court of Arbitration

1  For the purposes of this Appendix, members of the Court include the President and Vice-Presidents of the Court.

2  The sessions of the Court, whether plenary or those of a Committee of the Court, are open only to its members and to the Secretariat.

3  However, in exceptional circumstances, the President of the Court may invite other persons to attend. Such persons must respect the confidential nature of the work of the Court.

4  The documents submitted to the Court, or drawn up by it or the Secretariat in the course of the Court's proceedings, are communicated only to the members of the Court and to the Secretariat and to persons authorized by the President to attend Court sessions.

5  The President or the Secretary General of the Court may authorize researchers undertaking work of an academic nature to acquaint themselves with awards and other documents of general interest, with the exception of memoranda, notes, statements and documents remitted by the parties within the framework of arbitration proceedings.

6  Such authorization shall not be given unless the beneficiary has undertaken to respect the confidential character of the documents made available and to refrain from publishing anything based upon information contained therein without having previously submitted the text for approval to the Secretary General of the Court.

7  The Secretariat will in each case submitted to arbitration under the Rules retain in the archives of the Court all awards, Terms of Reference and decisions of the Court, as well as copies of the pertinent correspondence of the Secretariat.

8   Any documents, communications or correspondence submitted by the parties or the arbitrators may be destroyed unless a party or an arbitrator requests in writing within a period fixed by the Secretariat the return of such documents, communications or correspondence. All related costs and expenses for the return of those documents shall be paid by such party or arbitrator.

## ARTICLE 2

### Participation of Members of the International Court of Arbitration in ICC Arbitration

1   The President and the members of the Secretariat of the Court may not act as arbitrators or as counsel in cases submitted to ICC arbitration.

2   The Court shall not appoint Vice-Presidents or members of the Court as arbitrators. They may, however, be proposed for such duties by one or more of the parties, or pursuant to any other procedure agreed upon by the parties, subject to confirmation.

3   When the President, a Vice-President or a member of the Court or of the Secretariat is involved in any capacity whatsoever in proceedings pending before the Court, such person must inform the Secretary General of the Court upon becoming aware of such involvement.

4   Such person must be absent from the Court session whenever the matter is considered by the Court and shall not participate in the discussions or in the decisions of the Court.

5   Such person will not receive any material documentation or information pertaining to such proceedings.

### ARTICLE 3

#### Relations between the Members of the Court and the ICC National Committees and Groups

1   By virtue of their capacity, the members of the Court are independent of the ICC National Committees and Groups which proposed them for appointment by the ICC World Council.

2   Furthermore, they must regard as confidential, vis-à-vis the said National Committees and Groups, any information concerning individual cases with which they have become acquainted in their capacity as members of the Court, except when they have been requested by the President of the Court, by a Vice-President of the Court authorized by the President of the Court, or by the Court's Secretary General to communicate specific information to their respective National Committees or Groups.

### ARTICLE 4

#### Committee of the Court

1   In accordance with the provisions of Article 1(4) of the Rules and Article 5 of its statutes (Appendix I), the Court hereby establishes a Committee of the Court.

2   The members of the Committee consist of a president and at least two other members. The President of the Court acts as the president of the Committee. In the President's absence or otherwise at the President's request, a Vice-President of the Court or, in exceptional circumstances, another member of the Court may act as president of the Committee.

3   The other two members of the Committee are appointed by the Court from among the Vice-Presidents or the other members of the Court. At each Plenary Session the Court appoints the members who are to attend the meetings of the Committee to be held before the next Plenary Session.

4   The Committee meets when convened by its president. Two members constitute a quorum.

5 (a) The Court shall determine the decisions that may be taken by the Committee.

   (b) The decisions of the Committee are taken unanimously.

   (c) When the Committee cannot reach a decision or deems it preferable to abstain, it transfers the case to the next Plenary Session, making any suggestions it deems appropriate.

   (d) The Committee's decisions are brought to the notice of the Court at its next Plenary Session.

## ARTICLE 5

### Court Secretariat

1 In the Secretary General's absence or otherwise at the Secretary General's request, the Deputy Secretary General and/or the General Counsel shall have the authority to refer matters to the Court, confirm arbitrators, certify true copies of awards and request the payment of a provisional advance, respectively provided for in Articles 6(3), 13(2), 34(2) and 36(1) of the Rules.

2 The Secretariat may, with the approval of the Court, issue notes and other documents for the information of the parties and the arbitrators, or as necessary for the proper conduct of the arbitral proceedings.

3 Offices of the Secretariat may be established outside the headquarters of the ICC. The Secretariat shall keep a list of offices designated by the Secretary General. Requests for Arbitration may be submitted to the Secretariat at any of its offices, and the Secretariat's functions under the Rules may be carried out from any of its offices, as instructed by the Secretary General, Deputy Secretary General or General Counsel.

## ARTICLE 6

### Scrutiny of Arbitral Awards

When the Court scrutinizes draft awards in accordance with Article 33 of the Rules, it considers, to the extent practicable, the requirements of mandatory law at the place of the arbitration.

ICC ARBITRATION RULES
APPENDIX III – ARBITRATION COSTS AND FEES

### ARTICLE 1

#### Advance on Costs

1   Each request to commence an arbitration pursuant to the Rules must be accompanied by a filing fee of US\$ 3,000. Such payment is non-refundable and shall be credited to the claimant's portion of the advance on costs.

2   The provisional advance fixed by the Secretary General according to Article 36(1) of the Rules shall normally not exceed the amount obtained by adding together the ICC administrative expenses, the minimum of the fees (as set out in the scale hereinafter) based upon the amount of the claim and the expected reimbursable expenses of the arbitral tribunal incurred with respect to the drafting of the Terms of Reference. If such amount is not quantified, the provisional advance shall be fixed at the discretion of the Secretary General. Payment by the claimant shall be credited to its share of the advance on costs fixed by the Court.

3   In general, after the Terms of Reference have been signed or approved by the Court and the procedural timetable has been established, the arbitral tribunal shall, in accordance with Article 36(6) of the Rules, proceed only with respect to those claims or counterclaims in regard to which the whole of the advance on costs has been paid.

4   The advance on costs fixed by the Court according to Articles 36(2) or 36(4) of the Rules comprises the fees of the arbitrator or arbitrators (hereinafter referred to as "arbitrator"), any arbitration-related expenses of the arbitrator and the ICC administrative expenses.

5   Each party shall pay its share of the total advance on costs in cash. However, if a party's share of the advance on costs is greater than US\$ 500,000 (the "Threshold Amount"), such party may post a bank guarantee for any amount above the Threshold Amount. The Court may modify the Threshold Amount at any time at its discretion.

**ICC ARBITRATION RULES**
**APPENDIX III – ARBITRATION COSTS AND FEES**

6  The Court may authorize the payment of advances on costs, or any party's share thereof, in instalments, subject to such conditions as the Court thinks fit, including the payment of additional ICC administrative expenses.

7  A party that has already paid in full its share of the advance on costs fixed by the Court may, in accordance with Article 36(5) of the Rules, pay the unpaid portion of the advance owed by the defaulting party by posting a bank guarantee.

8  When the Court has fixed separate advances on costs pursuant to Article 36(3) of the Rules, the Secretariat shall invite each party to pay the amount of the advance corresponding to its respective claim(s).

9  When, as a result of the fixing of separate advances on costs, the separate advance fixed for the claim of either party exceeds one half of such global advance as was previously fixed (in respect of the same claims and counterclaims that are the subject of separate advances), a bank guarantee may be posted to cover any such excess amount. In the event that the amount of the separate advance is subsequently increased, at least one half of the increase shall be paid in cash.

10 The Secretariat shall establish the terms governing all bank guarantees which the parties may post pursuant to the above provisions.

11 As provided in Article 36(5) of the Rules, the advance on costs may be subject to readjustment at any time during the arbitration, in particular to take into account fluctuations in the amount in dispute, changes in the amount of the estimated expenses of the arbitrator, or the evolving difficulty or complexity of arbitration proceedings.

12 Before any expertise ordered by the arbitral tribunal can be commenced, the parties, or one of them, shall pay an advance on costs fixed by the arbitral tribunal sufficient to cover the expected fees and expenses of the expert as determined by the arbitral tribunal. The arbitral tribunal shall be responsible for ensuring the payment by the parties of such fees and expenses.

13 The amounts paid as advances on costs do not yield interest for the parties or the arbitrator.

## ARTICLE 2

### Costs and Fees

1   Subject to Article 37(2) of the Rules, the Court shall fix the fees of the arbitrator in accordance with the scale hereinafter set out or, where the amount in dispute is not stated, at its discretion.

2   In setting the arbitrator's fees, the Court shall take into consideration the diligence and efficiency of the arbitrator, the time spent, the rapidity of the proceedings, the complexity of the dispute and the timeliness of the submission of the draft award, so as to arrive at a figure within the limits specified or, in exceptional circumstances (Article 37(2) of the Rules), at a figure higher or lower than those limits.

3   When a case is submitted to more than one arbitrator, the Court, at its discretion, shall have the right to increase the total fees up to a maximum which shall normally not exceed three times the fees of one arbitrator.

4   The arbitrator's fees and expenses shall be fixed exclusively by the Court as required by the Rules. Separate fee arrangements between the parties and the arbitrator are contrary to the Rules.

5   The Court shall fix the ICC administrative expenses of each arbitration in accordance with the scale hereinafter set out or, where the amount in dispute is not stated, at its discretion. In exceptional circumstances, the Court may fix the ICC administrative expenses at a lower or higher figure than that which would result from the application of such scale, provided that such expenses shall normally not exceed the maximum amount of the scale.

6   At any time during the arbitration, the Court may fix as payable a portion of the ICC administrative expenses corresponding to services that have already been performed by the Court and the Secretariat.

7   The Court may require the payment of administrative expenses in addition to those provided in the scale of administrative expenses as a condition for holding an arbitration in abeyance at the request of the parties or of one of them with the acquiescence of the other.

8   If an arbitration terminates before the rendering of a final award, the Court shall fix the fees and expenses of the arbitrators and the ICC administrative expenses at its discretion, taking into account the stage attained by the arbitral proceedings and any other relevant circumstances.

9   Any amount paid by the parties as an advance on costs exceeding the costs of the arbitration fixed by the Court shall be reimbursed to the parties having regard to the amounts paid.

10  In the case of an application under Article 35(2) of the Rules or of a remission pursuant to Article 35(4) of the Rules, the Court may fix an advance to cover additional fees and expenses of the arbitral tribunal and additional ICC administrative expenses and may make the transmission of such application to the arbitral tribunal subject to the prior cash payment in full to the ICC of such advance. The Court shall fix at its discretion the costs of the procedure following an application or a remission, which shall include any possible fees of the arbitrator and ICC administrative expenses, when approving the decision of the arbitral tribunal.

11  The Secretariat may require the payment of administrative expenses in addition to those provided in the scale of administrative expenses for any expenses arising in relation to a request pursuant to Article 34(5) of the Rules.

12  When an arbitration is preceded by an attempt at amicable resolution pursuant to the ICC ADR Rules, one half of the ICC administrative expenses paid for such ADR proceedings shall be credited to the ICC administrative expenses of the arbitration.

13  Amounts paid to the arbitrator do not include any possible value added tax (VAT) or other taxes or charges and imposts applicable to the arbitrator's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such charges or taxes is a matter solely between the arbitrator and the parties.

14  Any ICC administrative expenses may be subject to value added tax (VAT) or charges of a similar nature at the prevailing rate.

### ARTICLE 3

#### ICC as Appointing Authority

Any request received for an authority of the ICC to act as appointing authority will be treated in accordance with the Rules of ICC as Appointing Authority in UNCITRAL or Other *Ad Hoc* Arbitration Proceedings and shall be accompanied by a non-refundable filing fee of US$ 3,000. No request shall be processed unless accompanied by the said filing fee. For additional services, ICC may at its discretion fix ICC administrative expenses, which shall be commensurate with the services provided and shall normally not exceed the maximum amount of US$ 10,000.

### ARTICLE 4

#### Scales of Administrative Expenses and Arbitrator's Fees

1   The Scales of Administrative Expenses and Arbitrator's Fees set forth below shall be effective as of 1 January 2012 in respect of all arbitrations commenced on or after such date, irrespective of the version of the Rules applying to such arbitrations.

2   To calculate the ICC administrative expenses and the arbitrator's fees, the amounts calculated for each successive tranche of the amount in dispute must be added together, except that where the amount in dispute is over US$ 500 million, a flat amount of US$ 113,215 shall constitute the entirety of the ICC administrative expenses.

3   All amounts fixed by the Court or pursuant to any of the appendices to the Rules are payable in US$ except where prohibited by law, in which case the ICC may apply a different scale and fee arrangement in another currency.

## ICC ARBITRATION RULES
### APPENDIX III – ARBITRATION COSTS AND FEES

## A Administrative Expenses

| Amount in dispute (in US Dollars) | Administrative expenses* |
|---|---|
| up to 50,000 | $3,000 |
| from 50,001 to 100,000 | 4.73% |
| from 100,001 to 200,000 | 2.53% |
| from 200,001 to 500,000 | 2.09% |
| from 500,001 to 1,000,000 | 1.51% |
| from 1,000,001 to 2,000,000 | 0.95% |
| from 2,000,001 to 5,000,000 | 0.46% |
| from 5,000,001 to 10,000,000 | 0.25% |
| from 10,000,001 to 30,000,000 | 0.10% |
| from 30,000,001 to 50,000,000 | 0.09% |
| from 50,000,001 to 80,000,000 | 0.01% |
| from 80,000,001 to 500,000,000 | 0.0035% |
| over 500,000,000 | $113,215 |

\* For illustrative purposes only, the table on page 55 indicates the resulting administrative expenses in US$ when the proper calculations have been made.

## B Arbitrator's Fees

| Amount in dispute (in US Dollars) | Fees** | |
|---|---|---|
| | minimum | maximum |
| up to 50,000 | $3,000 | 18.0200% |
| from 50,001 to 100,000 | 2.6500% | 13.5680% |
| from 100,001 to 200,000 | 1.4310% | 7.6850% |
| from 200,001 to 500,000 | 1.3670% | 6.8370% |
| from 500,001 to 1,000,000 | 0.9540% | 4.0280% |
| from 1,000,001 to 2,000,000 | 0.6890% | 3.6040% |
| from 2,000,001 to 5,000,000 | 0.3750% | 1.3910% |
| from 5,000,001 to 10,000,000 | 0.1280% | 0.9100% |
| from 10,000,001 to 30,000,000 | 0.0640% | 0.2410% |
| from 30,000,001 to 50,000,000 | 0.0590% | 0.2280% |
| from 50,000,001 to 80,000,000 | 0.0330% | 0.1570% |
| from 80,000,001 to 100,000,000 | 0.0210% | 0.1150% |
| from 100,000,001 to 500,000,000 | 0.0110% | 0.0580% |
| over 500,000,000 | 0.0100% | 0.0400% |

\*\* For illustrative purposes only, the table on page 56 indicates the resulting range of fees in US$ when the proper calculations have been made.

| Amount in Dispute | A Administrative Expenses* |
|---|---|
| **(in US Dollars)** | **(in US Dollars)** |
| up to 50,000 | 3,000 |
| from 50,001 to 100,000 | 3,000 + 4.73% of amt. over 50,000 |
| from 100,001 to 200,000 | 5,365 + 2.53% of amt. over 100,000 |
| from 200,001 to 500,000 | 7,895 + 2.09% of amt. over 200,000 |
| from 500,001 to 1,000,000 | 14,165 + 1.51% of amt. over 500,000 |
| from 1,000,001 to 2,000,000 | 21,715 + 0.95% of amt. over 1,000,000 |
| from 2,000,001 to 5,000,000 | 31,215 + 0.46% of amt. over 2,000,000 |
| from 5,000,001 to 10,000,000 | 45,015 + 0.25% of amt. over 5,000,000 |
| from 10,000,001 to 30,000,000 | 57,515 + 0.10% of amt. over 10,000,000 |
| from 30,000,001 to 50,000,000 | 77,515 + 0.09% of amt. over 30,000,000 |
| from 50,000,001 to 80,000,000 | 95,515 + 0.01% of amt. over 50,000,000 |
| from 80,000,001 to 100,000,000 | 98,515 + 0.0035% of amt. over 80,000,000 |
| from 100,000,001 to 500,000,000 | 99,215 + 0.0035% of amt. over 100,000,000 |
| over 500,000,000 | 113,215 |

* See page 54.

# ICC ARBITRATION RULES
## APPENDIX III – ARBITRATION COSTS AND FEES

| Amount in Dispute | B Arbitrator's Fees** | |
|---|---|---|
| (in US Dollars) | (in US Dollars) | |
| | Minimum | Maximum |
| up to 50,000 | 3,000 | 18,0200% of amount in dispute |
| from 50,001 to 100,000 | 3,000 + 2.6500% of amt. over 50,000 | 9,010 + 13.5680% of amt. over 50,000 |
| from 100,001 to 200,000 | 4,325 + 1.4310% of amt. over 100,000 | 15,794 + 7.6850% of amt. over 100,000 |
| from 200,001 to 500,000 | 5,756 + 1.3670% of amt. over 200,000 | 23,479 + 6.8370% of amt. over 200,000 |
| from 500,001 to 1,000,000 | 9,857 + 0.9540% of amt. over 500,000 | 43,990 + 4.0280% of amt. over 500,000 |
| from 1,000,001 to 2,000,000 | 14,627 + 0.6890% of amt. over 1,000,000 | 64,130 + 3.6040% of amt. over 1,000,000 |
| from 2,000,001 to 5,000,000 | 21,517 + 0.3750% of amt. over 2,000,000 | 100,170 + 1.3910% of amt. over 2,000,000 |
| from 5,000,001 to 10,000,000 | 32,767 + 0.1280% of amt. over 5,000,000 | 141,900 + 0.9100% of amt. over 5,000,000 |
| from 10,000,001 to 30,000,000 | 39,167 + 0.0640% of amt. over 10,000,000 | 187,400 + 0.2410% of amt. over 10,000,000 |
| from 30,000,001 to 50,000,000 | 51,967 + 0.0590% of amt. over 30,000,000 | 235,600 + 0.2280% of amt. over 30,000,000 |
| from 50,000,001 to 80,000,000 | 63,767 + 0.0330% of amt. over 50,000,000 | 281,200 + 0.1570% of amt. over 50,000,000 |
| from 80,000,001 to 100,000,000 | 73,667 + 0.0210% of amt. over 80,000,000 | 328,300 + 0.1150% of amt. over 80,000,000 |
| from 100,000,001 to 500,000,000 | 77,867 + 0.0110% of amt. over 100,000,000 | 351,300 + 0.0580% of amt. over 100,000,000 |
| over 500,000,000 | 121,867 + 0.0100% of amt. over 500,000,000 | 583,300 + 0.0400% of amt. over 500,000,000 |

** See page 54.

The following are examples of case management techniques that can be used by the arbitral tribunal and the parties for controlling time and cost. Appropriate control of time and cost is important in all cases. In cases of low complexity and low value, it is particularly important to ensure that time and costs are proportionate to what is at stake in the dispute.

a) Bifurcating the proceedings or rendering one or more partial awards on key issues, when doing so may genuinely be expected to result in a more efficient resolution of the case.

b) Identifying issues that can be resolved by agreement between the parties or their experts.

c) Identifying issues to be decided solely on the basis of documents rather than through oral evidence or legal argument at a hearing.

d) Production of documentary evidence:

(i) requiring the parties to produce with their submissions the documents on which they rely;

(ii) avoiding requests for document production when appropriate in order to control time and cost;

(iii) in those cases where requests for document production are considered appropriate, limiting such requests to documents or categories of documents that are relevant and material to the outcome of the case;

(iv) establishing reasonable time limits for the production of documents;

(v) using a schedule of document production to facilitate the resolution of issues in relation to the production of documents.

e) Limiting the length and scope of written submissions and written and oral witness evidence (both fact witnesses and experts) so as to avoid repetition and maintain a focus on key issues.

f) Using telephone or video conferencing for procedural and other hearings where attendance in person is not essential and use of IT that enables online communication among the parties, the arbitral tribunal and the Secretariat of the Court.

g) Organizing a pre-hearing conference with the arbitral tribunal at which arrangements for a hearing can be discussed and agreed and the arbitral tribunal can indicate to the parties issues on which it would like the parties to focus at the hearing.

h) Settlement of disputes:

(i) informing the parties that they are free to settle all or part of the dispute either by negotiation or through any form of amicable dispute resolution methods such as, for example, mediation under the ICC ADR Rules;

(ii) where agreed between the parties and the arbitral tribunal, the arbitral tribunal may take steps to facilitate settlement of the dispute, provided that every effort is made to ensure that any subsequent award is enforceable at law.

Additional techniques are described in the ICC publication entitled "Techniques for Controlling Time and Costs in Arbitration".

### ARTICLE 1

#### Application for Emergency Measures

1   A party wishing to have recourse to an emergency arbitrator pursuant to Article 29 of the Rules of Arbitration of the ICC (the "Rules") shall submit its Application for Emergency Measures (the "Application") to the Secretariat at any of the offices specified in the Internal Rules of the Court in Appendix II to the Rules.

2   The Application shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for the emergency arbitrator, and one for the Secretariat.

3   The Application shall contain the following information:

   a) the name in full, description, address and other contact details of each of the parties;

   b) the name in full, address and other contact details of any person(s) representing the applicant;

   c) a description of the circumstances giving rise to the Application and of the underlying dispute referred or to be referred to arbitration;

   d) a statement of the Emergency Measures sought;

   e) the reasons why the applicant needs urgent interim or conservatory measures that cannot await the constitution of an arbitral tribunal;

   f) any relevant agreements and, in particular, the arbitration agreement;

   g) any agreement as to the place of the arbitration, the applicable rules of law or the language of the arbitration;

   h) proof of payment of the amount referred to in Article 7(1) of this Appendix; and

    i) any Request for Arbitration and any other submissions in connection with the underlying dispute, which have been filed with the Secretariat by any of the parties to the emergency arbitrator proceedings prior to the making of the Application.

The Application may contain such other documents or information as the applicant considers appropriate or as may contribute to the efficient examination of the Application.

4   The Application shall be drawn up in the language of the arbitration if agreed upon by the parties or, in the absence of any such agreement, in the language of the arbitration agreement.

5   If and to the extent that the President of the Court (the "President") considers, on the basis of the information contained in the Application, that the Emergency Arbitrator Provisions apply with reference to Article 29(5) and Article 29(6) of the Rules, the Secretariat shall transmit a copy of the Application and the documents annexed thereto to the responding party. If and to the extent that the President considers otherwise, the Secretariat shall inform the parties that the emergency arbitrator proceedings shall not take place with respect to some or all of the parties and shall transmit a copy of the Application to them for information.

6   The President shall terminate the emergency arbitrator proceedings if a Request for Arbitration has not been received by the Secretariat from the applicant within 10 days of the Secretariat's receipt of the Application, unless the emergency arbitrator determines that a longer period of time is necessary.

### ARTICLE 2

#### Appointment of the Emergency Arbitrator; Transmission of the File

1   The President shall appoint an emergency arbitrator within as short a time as possible, normally within two days from the Secretariat's receipt of the Application.

2   No emergency arbitrator shall be appointed after the file has been transmitted to the arbitral tribunal pursuant to Article 16 of the Rules. An emergency arbitrator appointed prior thereto shall retain the power to make an order within the time limit permitted by Article 6(4) of this Appendix.

3   Once the emergency arbitrator has been appointed, the Secretariat shall so notify the parties and shall transmit the file to the emergency arbitrator. Thereafter, all written communications from the parties shall be submitted directly to the emergency arbitrator with a copy to the other party and the Secretariat. A copy of any written communications from the emergency arbitrator to the parties shall be submitted to the Secretariat.

4   Every emergency arbitrator shall be and remain impartial and independent of the parties involved in the dispute.

5   Before being appointed, a prospective emergency arbitrator shall sign a statement of acceptance, availability, impartiality and independence. The Secretariat shall provide a copy of such statement to the parties.

6   An emergency arbitrator shall not act as an arbitrator in any arbitration relating to the dispute that gave rise to the Application.

### ARTICLE 3

#### Challenge of an Emergency Arbitrator

1   A challenge against the emergency arbitrator must be made within three days from receipt by the party making the challenge of the notification of the appointment or from the date when that party was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

2   The challenge shall be decided by the Court after the Secretariat has afforded an opportunity for the emergency arbitrator and the other party or parties to provide comments in writing within a suitable period of time.

### ARTICLE 4

#### Place of the Emergency Arbitrator Proceedings

1   If the parties have agreed upon the place of the arbitration, such place shall be the place of the emergency arbitrator proceedings. In the absence of such agreement, the President shall fix the place of the emergency arbitrator proceedings, without prejudice to the determination of the place of the arbitration pursuant to Article 18(1) of the Rules.

2   Any meetings with the emergency arbitrator may be conducted through a meeting in person at any location the emergency arbitrator considers appropriate or by video conference, telephone or similar means of communication.

## ARTICLE 5

### Proceedings

1   The emergency arbitrator shall establish a procedural timetable for the emergency arbitrator proceedings within as short a time as possible, normally within two days from the transmission of the file to the emergency arbitrator pursuant to Article 2(3) of this Appendix.

2   The emergency arbitrator shall conduct the proceedings in the manner which the emergency arbitrator considers to be appropriate, taking into account the nature and the urgency of the Application. In all cases, the emergency arbitrator shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.

## ARTICLE 6

### Order

1   Pursuant to Article 29(2) of the Rules, the emergency arbitrator's decision shall take the form of an order (the "Order").

2   In the Order, the emergency arbitrator shall determine whether the Application is admissible pursuant to Article 29(1) of the Rules and whether the emergency arbitrator has jurisdiction to order Emergency Measures.

3   The Order shall be made in writing and shall state the reasons upon which it is based. It shall be dated and signed by the emergency arbitrator.

4   The Order shall be made no later than 15 days from the date on which the file was transmitted to the emergency arbitrator pursuant to Article 2(3) of this Appendix. The President may extend the time limit pursuant to a reasoned request from the emergency arbitrator or on the President's own initiative if the President decides it is necessary to do so.

5   Within the time limit established pursuant to Article 6(4) of this Appendix, the emergency arbitrator shall send the Order to the parties, with a copy to the Secretariat, by any of the means of communication permitted by Article 3(2) of the Rules that the emergency arbitrator considers will ensure prompt receipt.

6   The Order shall cease to be binding on the parties upon:

   a) the President's termination of the emergency arbitrator proceedings pursuant to Article 1(6) of this Appendix;

   b) the acceptance by the Court of a challenge against the emergency arbitrator pursuant to Article 3 of this Appendix;

   c) the arbitral tribunal's final award, unless the arbitral tribunal expressly decides otherwise; or

   d) the withdrawal of all claims or the termination of the arbitration before the rendering of a final award.

7   The emergency arbitrator may make the Order subject to such conditions as the emergency arbitrator thinks fit, including requiring the provision of appropriate security.

8   Upon a reasoned request by a party made prior to the transmission of the file to the arbitral tribunal pursuant to Article 16 of the Rules, the emergency arbitrator may modify, terminate or annul the Order.

## ARTICLE 7

### Costs of the Emergency Arbitrator Proceedings

1   The applicant must pay an amount of US$ 40,000, consisting of US$ 10,000 for ICC administrative expenses and US$ 30,000 for the emergency arbitrator's fees and expenses. Notwithstanding Article 1(5) of this Appendix, the Application shall not be notified until the payment of US$ 40,000 is received by the Secretariat.

2   The President may, at any time during the emergency arbitrator proceedings, decide to increase the emergency arbitrator's fees or the ICC administrative expenses taking into account, *inter alia*, the nature of the case and the nature and amount of work performed by the emergency arbitrator, the Court, the President and the Secretariat. If the party which submitted the Application fails to pay the increased costs within the time limit fixed by the Secretariat, the Application shall be considered as withdrawn.

3   The emergency arbitrator's Order shall fix the costs of the emergency arbitrator proceedings and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

4   The costs of the emergency arbitrator proceedings include the ICC administrative expenses, the emergency arbitrator's fees and expenses and the reasonable legal and other costs incurred by the parties for the emergency arbitrator proceedings.

5   In the event that the emergency arbitrator proceedings do not take place pursuant to Article 1(5) of this Appendix or are otherwise terminated prior to the making of an Order, the President shall determine the amount to be reimbursed to the applicant, if any. An amount of US$ 5,000 for ICC administrative expenses is non-refundable in all cases.

## ARTICLE 8

### General Rule

1   The President shall have the power to decide, at the President's discretion, all matters relating to the administration of the emergency arbitrator proceedings not expressly provided for in this Appendix.

2   In the President's absence or otherwise at the President's request, any of the Vice-Presidents of the Court shall have the power to take decisions on behalf of the President.

3   In all matters concerning emergency arbitrator proceedings not expressly provided for in this Appendix, the Court, the President and the emergency arbitrator shall act in the spirit of the Rules and this Appendix.

# ADR RULES

ADR Rules of the
International Chamber of Commerce

In force as from 1 July 2001



### Preamble

Amicable settlement is a desirable solution for business disputes and differences. It can occur before or during the litigation or arbitration of a dispute and can often be facilitated through the aid of a third party (the "Neutral") acting in accordance with simple rules. The parties can agree to submit to such rules in their underlying contract or at any other time.

The International Chamber of Commerce (the "ICC") sets out these amicable dispute resolution rules, entitled the ICC ADR Rules (the "Rules"), which permit the parties to agree upon whatever settlement technique they believe to be appropriate to help them settle their dispute. In the absence of an agreement of the parties on a settlement technique, mediation shall be the settlement technique used under the Rules. The Guide to ICC ADR [available at <www.iccadr.org>], which does not form part of the Rules, provides an explanation of the Rules and of various settlement techniques which can be used pursuant to the Rules.

### ARTICLE 1

### Scope of the ICC ADR Rules

All business disputes, whether or not of an international character, may be referred to ADR proceedings pursuant to these Rules. The provisions of these Rules may be modified by agreement of all of the parties, subject to the approval of the ICC.

### ARTICLE 2

### Commencement of the ADR Proceedings
#### A  Where there is an agreement to refer to the Rules

1  Where there is an agreement between the parties to refer their dispute to the ICC ADR Rules, any party or parties wishing to commence ADR proceedings pursuant to the Rules shall send to the ICC a written Request for ADR, which shall include:

a) the names, addresses, telephone and facsimile numbers and email addresses of the parties to the dispute and their authorized representatives, if any;

b) a description of the dispute including, if possible, an assessment of its value;

c) any joint designation by all of the parties of a Neutral or any agreement of all of the parties upon the qualifications of a Neutral to be appointed by the ICC where no joint designation has been made;

d) a copy of any written agreement under which the Request for ADR is made; and

e) the registration fee of the ADR proceedings, as set out in the Appendix hereto.

2   Where the Request for ADR is not filed jointly by all of the parties, the party or parties filing the Request shall simultaneously send the Request to the other party or parties. Such Request may include any proposal regarding the qualifications of a Neutral or any proposal of one or more Neutrals to be designated by all of the parties. Thereafter, all of the parties may jointly designate a Neutral or may agree upon the qualifications of a Neutral to be appointed by the ICC. In either case, the parties shall promptly notify the ICC thereof.

3   The ICC shall promptly acknowledge receipt of the Request for ADR in writing to the parties.

### B   Where there is no agreement to refer to the Rules

1   Where there is no agreement between the parties to refer their dispute to the ICC ADR Rules, any party or parties wishing to commence ADR proceedings pursuant to the Rules shall send to the ICC a written Request for ADR, which shall include:

a) the names, addresses, telephone and facsimile numbers and email addresses of the parties to the dispute and their authorized representatives, if any;

b) a description of the dispute including, if possible, an assessment of its value; and

c) the registration fee of the ADR proceedings, as set out in the Appendix hereto.

The Request for ADR may also include any proposal regarding the qualifications of a Neutral or any proposal of one or more Neutrals to be designated by all of the parties.

2   The ICC shall promptly inform the other party or parties in writing of the Request for ADR. Such party or parties shall be asked to inform the ICC in writing, within 15 days of receipt of the Request for ADR, as to whether they agree or decline to participate in the ADR proceedings. In the former case, they may provide any proposal regarding the qualifications of a Neutral and may propose one or more Neutrals to be designated by the parties. Thereafter, all of the parties may jointly designate a Neutral or may agree upon the qualifications of a Neutral to be appointed by the ICC. In either case, the parties shall promptly notify the ICC thereof.

In the absence of any reply within such 15-day period, or in the case of a negative reply, the Request for ADR shall be deemed to have been declined and ADR proceedings shall not be commenced. The ICC shall promptly so inform in writing the party or parties which filed the Request for ADR.

## ARTICLE 3

### Selection of the Neutral

1   Where all of the parties have jointly designated a Neutral, the ICC shall take note of that designation, and such person, upon notifying the ICC of his or her agreement to serve, shall act as the Neutral in the ADR proceedings. Where a Neutral has not been designated by all of the parties, or where the designated Neutral does not agree to serve, the ICC shall promptly appoint a Neutral, either through an ICC National Committee or otherwise, and notify the parties thereof. The ICC shall make all reasonable efforts to appoint a Neutral having the qualifications, if any, which have been agreed upon by all of the parties.

2   Every prospective Neutral shall promptly provide the ICC with a *curriculum vitae* and a statement of independence, both duly signed and dated. The prospective Neutral shall disclose to the ICC in the statement of independence any facts or circumstances which might be of such a nature as to call into question his or her independence in the eyes of the parties. The ICC shall provide such information to the parties in writing.

3   If any party objects to the Neutral appointed by the ICC and notifies the ICC and the other party or parties thereof in writing, stating the reasons for such objection, within 15 days of receipt of notification of the appointment, the ICC shall promptly appoint another Neutral.

4   Upon agreement of all of the parties, the parties may designate more than one Neutral or request the ICC to appoint more than one Neutral, in accordance with the provisions of these Rules. In appropriate circumstances, the ICC may propose the appointment of more than one Neutral to the parties.

## ARTICLE 4

### Fees and Costs

1   The party or parties filing a Request for ADR shall include with the Request a non-refundable registration fee, as set out in the Appendix hereto. No Request for ADR shall be processed unless accompanied by the requisite payment.

2   Following the receipt of a Request for ADR, the ICC shall request the parties to pay a deposit in an amount likely to cover the administrative expenses of the ICC and the fees and expenses of the Neutral for the ADR proceedings, as set out in the Appendix hereto. The ADR proceedings shall not go forward until payment of such deposit has been received by the ICC.

3   In any case where the ICC considers that the deposit is not likely to cover the total costs of the ADR proceedings, the amount of such deposit may be subject to readjustment. The ICC may stay the ADR proceedings until the corresponding payments are made by the parties.

4   Upon termination of the ADR proceedings, the ICC shall settle the total costs of the proceedings and shall, as the case may be, reimburse the parties for any excess payment or bill the parties for any balance required pursuant to these Rules.

5   All above deposits and costs shall be borne in equal shares by the parties, unless they agree otherwise in writing. However, any party shall be free to pay the unpaid balance of such deposits and costs should another party fail to pay its share.

6   A party's other expenditure shall remain the responsibility of that party.

## ARTICLE 5

### Conduct of the ADR Procedure

1   The Neutral and the parties shall promptly discuss, and seek to reach agreement upon, the settlement technique to be used, and shall discuss the specific ADR procedure to be followed.

2   In the absence of an agreement of the parties on the settlement technique to be used, mediation shall be used.

3   The Neutral shall conduct the procedure in such manner as the Neutral sees fit. In all cases the Neutral shall be guided by the principles of fairness and impartiality and by the wishes of the parties.

4   In the absence of an agreement of the parties, the Neutral shall determine the language or languages of the proceedings and the place of any meetings to be held.

5   Each party shall cooperate in good faith with the Neutral.

## ARTICLE 6

### Termination of the ADR Proceedings

1   ADR proceedings which have been commenced pursuant to these Rules shall terminate upon the earlier of:

a) the signing by the parties of a settlement agreement;

b) the notification in writing to the Neutral by one or more parties, at any time after the discussion referred to in Article 5(1) has occurred, of a decision no longer to pursue the ADR proceedings;

c)  the completion of the procedure established pursuant to Article 5 and the notification in writing thereof by the Neutral to the parties;

d)  the notification in writing by the Neutral to the parties that the ADR proceedings will not, in the Neutral's opinion, resolve the dispute between the parties;

e)  the expiration of any time limit set for the ADR proceedings, if not extended by all of the parties, such expiration to be notified in writing by the Neutral to the parties;

f)  the notification in writing by the ICC to the parties and the Neutral, not less than 15 days after the due date for any payment by one or more parties pursuant to these Rules, stating that such payment has not been made; or

g)  the notification in writing by the ICC to the parties stating, in the judgment of the ICC, that there has been a failure to designate a Neutral or that it has not been reasonably possible to appoint a Neutral.

2  The Neutral, upon any termination of the ADR proceedings pursuant to Article 6(1), (a)–(e), shall promptly notify the ICC of the termination of the ADR proceedings and shall provide the ICC with a copy of any notification referred to in Article 6(1), (b)–(e). In all cases the ICC shall confirm in writing the termination of the ADR proceedings to the parties and the Neutral, if a Neutral has already been designated or appointed.

## ARTICLE 7

### General Provisions

1  In the absence of any agreement of the parties to the contrary and unless prohibited by applicable law, the ADR proceedings, including their outcome, are private and confidential. Any settlement agreement between the parties shall similarly be kept confidential except that a party shall have the right to disclose it to the extent that such disclosure is required by applicable law or necessary for purposes of its implementation or enforcement.

2   Unless required to do so by applicable law and in the absence of any agreement of the parties to the contrary, a party shall not in any manner produce as evidence in any judicial, arbitration or similar proceedings:

   a) any documents, statements or communications which are submitted by another party or by the Neutral in the ADR proceedings, unless they can be obtained independently by the party seeking to produce them in the judicial, arbitration or similar proceedings;

   b) any views expressed or suggestions made by any party within the ADR proceedings with regard to the possible settlement of the dispute;

   c) any admissions made by another party within the ADR proceedings;

   d) any views or proposals put forward by the Neutral; or

   e) the fact that any party had indicated within the ADR proceedings that it was ready to accept a proposal for a settlement.

3   Unless all of the parties agree otherwise in writing, a Neutral shall not act nor shall have acted in any judicial, arbitration or similar proceedings relating to the dispute which is or was the subject of the ADR proceedings, whether as a judge, as an arbitrator, as an expert or as a representative or advisor of a party.

4   The Neutral, unless required by applicable law or unless all of the parties agree otherwise in writing, shall not give testimony in any judicial, arbitration or similar proceedings concerning any aspect of the ADR proceedings.

5   Neither the Neutral, nor the ICC and its employees, nor the ICC National Committees shall be liable to any person for any act or omission in connection with the ADR proceedings.

A   The party or parties filing a Request for ADR shall include with the Request a non-refundable registration fee of US$ 1,500 to cover the costs of processing the Request for ADR. No Request for ADR shall be processed unless accompanied by the requisite payment.

B   The administrative expenses of the ICC for the ADR proceedings shall be fixed at the ICC's discretion depending on the tasks carried out by the ICC. Such administrative expenses shall not exceed the maximum sum of US$ 10,000.

C   The fees of the Neutral shall be calculated on the basis of the time reasonably spent by the Neutral in the ADR proceedings, at an hourly rate fixed for such proceedings by the ICC in consultation with the Neutral and the parties. Such hourly rate shall be reasonable in amount and shall be determined in light of the complexity of the dispute and any other relevant circumstances. The amount of reasonable expenses of the Neutral shall be fixed by the ICC.

D   Amounts paid to the Neutral do not include any possible value added taxes (VAT) or other taxes or charges and imposts applicable to the Neutral's fees. Parties have a duty to pay any such taxes or charges; however, the recovery of any such taxes or charges is a matter solely between the Neutral and the parties.

# STANDARD AND SUGGESTED CLAUSES



STANDARD AND SUGGESTED CLAUSES

Below are standard and suggested clauses for use by parties who wish to have recourse to ICC arbitration and/or ICC ADR under the foregoing Rules.

### Arbitration
*All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules.*

### Arbitration without emergency arbitrator
*All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. The Emergency Arbitrator Provisions shall not apply.*

### Optional ADR
*The parties may at any time, without prejudice to any other proceedings, seek to settle any dispute arising out of or in connection with the present contract in accordance with the ICC ADR Rules.*

### Obligation to consider ADR
*In the event of any dispute arising out of or in connection with the present contract, the parties agree in the first instance to discuss and consider submitting the matter to settlement proceedings under the ICC ADR Rules.*

### Obligation to submit dispute to ADR with an automatic expiration mechanism
*In the event of any dispute arising out of or in connection with the present contract, the parties agree to submit the matter to settlement proceedings under the ICC ADR Rules. If the dispute has not been settled pursuant to the said Rules within 45 days following the filing of a Request for ADR or within such other period as the parties may agree in writing, the parties shall have no further obligations under this paragraph.*

### Obligation to submit dispute to ADR, followed by arbitration if required

*In the event of any dispute arising out of or in connection with the present contract, the parties agree to submit the matter to settlement proceedings under the ICC ADR Rules. If the dispute has not been settled pursuant to the said Rules within 45 days following the filing of a Request for ADR or within such other period as the parties may agree in writing, such dispute shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules of Arbitration.*

### How to use these clauses

Parties wishing to use ICC arbitration and/or ICC ADR should choose one of the above clauses, which cover different situations and needs.

If the parties do not want the Emergency Arbitrator Provisions to apply, they must expressly opt out by using the second of the two arbitration clauses.

Parties are free to adapt the chosen clause to their particular circumstances. For instance, when providing for arbitration, they may wish to stipulate the number of arbitrators, given that the Rules of Arbitration contain a presumption in favour of a sole arbitrator. They may also wish to stipulate the language and place of the arbitration and the law applicable to the merits. When providing for ADR, they may wish to specify the settlement technique to be applied, failing which mediation, the default mechanism, will be used.

The last clause above is a two-tiered clause providing for ADR followed by arbitration. Other combinations of services are also possible. Combined and multi-tiered dispute resolution clauses may help to facilitate dispute management. However, it is also possible for parties to file requests under the ICC ADR Rules or the ICC Rules for Expertise at any time, even after a dispute has arisen or in the course of other dispute resolution proceedings.

**STANDARD AND SUGGESTED CLAUSES**

At all times, care must be taken to avoid any risk of ambiguity in the drafting of the clause. Unclear wording causes uncertainty and delay and can hinder or even compromise the dispute resolution process.

When incorporating any of the above clauses in their contracts, parties are advised to take account of any factors that may affect their enforceability under applicable law. For instance, they should have regard to any mandatory requirements at the place of arbitration and the place of enforcement.

Translations of the above clauses and clauses providing for other procedures and combinations of procedures can be found at **<www.iccarbitration.org>**.

**ICC International Court of Arbitration®**
www.iccarbitration.org
arb@iccwbo.org
T +33 (0)1 49 53 29 05
F +33 (0)1 49 53 29 33

**ICC International Centre for ADR**
www.iccadr.org
adr@iccwbo.org
T +33 (0)1 49 53 30 52
F +33 (0)1 49 53 30 49



ICC Publication 850 E
ISBN 978-92-842-0113-6